[Crim. No. 444.   Third Appellate District.—August 31, 1918.]

THE PEOPLE, Respondent, v. FRED WADEMAN, Appellant.

CRIMINAL LAW—RAPE—FEMALE AGED FOURTEEN—RELIANCE ON ONE OF SEVERAL ALLEGED SEXUAL ACTS—FIXING DATE BY CIRCUMSTANCES. Where, on the trial of a charge of rape on a female fourteen years of age, alleged in the information to have been committed "on or about" a particular day, the district attorney, in his opening statement, mentioned two different days on which sexual intercourse took place, and being called on, by motion on behalf of the defendant, to select the particular act relied on and to designate the day and hour on which it was committed, the district attorney was unable to state the precise day of the month, but fixed the date by its relation in point of time to circumstances and events which happened at a time when the defendant admitted he was present, and after the close of the testimony in chief of the prosecuting witness had fixed the date and time by reference to the same circumstances and events, the motion to fix the precise day and time was renewed, the motion was properly denied.

ID.—EVIDENCE—UNCORROBORATED TESTIMONY OF PROSECUTING WITNESS. It is well settled that a conviction may be had upon the uncorroborated testimony of the prosecuting witness, although she may have made contradictory statements as to the person who had committed the criminal act and had otherwise made contradictory statements.

ID.—APPEAL—LACK OF CORROBORATING CIRCUMSTANCES—DUTY OF REVIEWING COURT.—Where there are no corroborating circumstances in cases of this kind, a reviewing court should scrutinize with discriminating care the testimony given by the prosecuting witness.

ID.—BIRTH OF NORMAL CHILD—PERIOD OF GESTATION.—Where the prosecuting witness had given birth to a child 252 days after the time fixed by the testimony as the date of the first sexual act, expert testimony to the effect that the child at its birth appeared to be a full nine months' child and that the normal period of gestation is from 270 to 280 days from the date of conception was not wholly inconsistent with the fact that conception might have taken place at the time fixed by the prosecuting witness as the time when she had sexual intercourse with the defendant.

ID.—ADMISSIBILITY OF PRIOR OR SUBSEQUENT LASCIVIOUS ACTS.—It being the rule that prior and subsequent acts of sexual intercourse are admissible as showing an adulterous disposition, any lascivious or other acts of familiarity tending to awaken or promote sexual desires are alike admissible.

ID.—REMARKS OF COURT—AGE OF PROSECUTING WITNESS.—It being the undisputed fact that the prosecuting witness was fourteen years of age, the defendant could not have been prejudiced by a remark of the court referring to her as "of tender years."

ID.—REFERENCE TO PROSECUTING WITNESS AS "NOT OVERLY BRIGHT."—A remark of the court that the "witness is not overly bright," having been used in connection with a ruling relaxing the rule somewhat which forbids leading questions, was not prejudicial.

ID.—EXCLUSION OF TESTIMONY—SEXUAL INTERCOURSE WITH OTHERS—PATERNITY OF CHILD.—Whether the ruling of the trial court was right or wrong in excluding questions of the district attorney to the prosecuting witness, as to whether she had ever had sexual intercourse with anyone else than the defendant, and as to who was the father of her child, the defendant was not prejudiced by the court's ruling, since it did not, as claimed by the defendant, preclude him from making proof that some other person was the father and was not so intended, the trial court having merely held that it was not a part of plaintiff's case and not at that point admissible, and the defendant made no offer during the trial to show that any person other than the defendant was the father of the child.

ID.—INSTRUCTIONS TO JURY—EVIDENCE — SPECIFIC CHARGE. — There having been no evidence of sexual intercourse except upon two occasions in May, within five days of each other, the trial court did not err in instructing the jury: "That while the crime is alleged to have occurred on or about the twentieth day of May, 1917, it is not necessary that the prosecution prove that the crime was actually committed by the defendant precisely on the twentieth day of May, 1917. It is sufficient to sustain the charge if you be convinced, from the evidence in the case, that the crime alleged was committed at any time within three years immediately preceding the filing of the information, which filing was had and done on the twenty-seventh day of December, 1917," since the jury having been also very clearly told by other instructions that the act relied on must be and was selected by the prosecution, and that the act thus selected must be established beyond a reasonable doubt, or that they must acquit the defendant, and that evidence of other acts was admissible only for the specific purpose explained by the court, they must have understood that conviction must rest entirely, if at all, upon evidence directed to the particular act selected by the prosecution.

ID.—REFUSAL OF REQUESTED INSTRUCTIONS—INFLUENCE OF PRESENCE OF CHILD IN COURT—DISREGARDING EXCLUDED QUESTION OF DISTRICT ATTORNEY AS TO PATERNITY.—The child of the prosecuting witness having been brought in while the witness was testifying, and she having testified to the date of its birth, and that it was hers, and

she having been asked by the district attorney, "Who is the father of that child?" and the question having been excluded on the objection of the defendant's counsel, the court having seemingly regarded the matter as rebuttal and not admissible for the prosecution unless evidence was introduced to show some man or men other than the defendant had had sexual relations with the prosecutrix, and no evidence having been offered by defendant having any tendency to show that some person other than the defendant might have been or was the child's father, the court did not err in declining to instruct the jury to disregard the question so asked by the district attorney, or in declining the request of the defendant that the court instruct the jury "not to be influenced or their sympathies captivated" by the presence of the child; that the child could be exhibited for the sole purpose of proving the *corpus delicti*, and not to prove that the defendant was its father, since there was no circumstance connected with the presence of the child having any tendency to show that defendant was its father and that the child was there for any purpose other than to show that it was the child of the prosecutrix.

Id.—Recital of Facts Contained in Information — Omission of Statement of Venue.—Where the uncontroverted testimony was that the act was committed in the county where the venue was laid, an instruction which, in reciting the facts contained in the information necessary to sustain a conviction, omitted a definite statement of the venue of the crime, but referred to the sexual act which must be proved beyond a reasonable doubt as the one "selected by the prosecution at the beginning of the trial," sufficiently pointed to the place where the offense was committed.

Id.—Age of Prosecutrix—Application of Section 264, Penal Code.— The information having distinctly charged that the female was under the age of sixteen, and the uncontroverted evidence showing that she was fourteen years and two months at the time the offense was committed, the court did not err in instructing the jury in effect "that if they should find that the girl was under the age of eighteen years, they must find that she was of the age stated in the information, to wit, fourteen years," since, in such case, section 264 of the Penal Code, as amended in 1913, has no application, it being only where "the female is over the age of sixteen years and under the age of eighteen years," that the jury, under that section, is called upon to "determine by their verdict whether the punishment shall be imprisonment in the county jail or in the state prison."

Id.—Verdict Without Finding as to Age.—In such case a verdict finding the defendant "guilty of rape as charged in the information" was sufficient without being supported by a separate or other finding as to the age of the prosecutrix.

ID.—APPEAL — REFUSAL OF REQUESTED INSTRUCTIONS — INSUFFICIENT
STATEMENT OF ERROR.—An appellate court is not called upon to
test the sufficiency of assignments of error claimed in the trial
court's refusal of requested instructions, not set out in appellant's
brief, but referred to only by number, with the comment that the
instruction should have been given, and a citation of a case, with-
out informing the court why appellant believes a particular instruc-
tion is violative of some rule or principle of law found in a decided
case.

ID.—MISCONDUCT OF DISTRICT ATTORNEY — DEFENDANT'S NEGLECT TO
TESTIFY — UNPREJUDICIAL REMARKS.—Although it is prejudicial
error for a district attorney to call the attention of the jury to the
fact that a defendant has not testified in his own behalf, and to
comment on the fact as warranting the inference that his silence
is evidence of guilt, the district attorney in the instant case had
a right, in speaking of the testimony of the prosecuting witness, to
claim that it was uncontradicted, and that no witness had been
called to impeach her testimony, and it cannot be said that his
remarks were so far prejudicial as to justify a reversal.

ID.—MOTION FOR NEW TRIAL—CONDUCT OF JUROR—RECEIVING EVIDENCE
OUT OF COURT.—Where the affidavits in support of a motion for
a new trial, on the ground a juror had received evidence out of
court by examining the child of the prosecutrix during a recess of
the court, showed that the juror, a woman, having gone into the
witness-room to inquire from a waiting witness as to the address
of a person she wished to see, looked casually at the child, which
was in the lap of another woman, it cannot be said that she "re-
ceived evidence out of court" in the sense in which the law deems
such conduct prejudicial.

ID.—ARRAIGNMENT FOR JUDGMENT—INFORMING DEFENDANT OF NATURE
OF CHARGE—PRESUMPTION OF TRUTH OF RECORD.—In the absence of
any showing to the contrary other than the mere silence of the
minutes, where the recitals in the judgment show that the require-
ment of section 1200 of the Penal Code that the defendant must
be informed of the nature of the charge against him, when he
appears for judgment, were complied with, it must be presumed
that the judgment speaks the truth.

ID.—FAILURE TO INFORM DEFENDANT OF NATURE OF CHARGE—NO MIS-
CARRIAGE OF JUSTICE.—Even if there was a failure to inform the
defendant of the nature of the charge when he appeared for judg-
ment, section 4½ of article VI of the constitution covers the case,
since it cannot be said that there has been a "miscarriage of·jus-
tice."

ID.—ERRONEOUS JUDGMENT—MODIFICATION.—As there is no minimum
punishment fixed or prescribed for rape, that portion of a judg-
ment on conviction of that offense which directs that the defendant

be imprisoned for a period of from one to fifty years is erroneous, and the judgment will be modified by striking such portion therefrom.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order denying a new trial. W. A. Anderson, Judge.

The facts are stated in the opinion of the court.

Theodore A. Bell, Charles W. Thomas, and R. B. McMillan, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was informed against by the district attorney of Yolo County for the crime of rape. He was found guilty and thereupon moved for a new trial, which was denied, and the court sentenced him to imprisonment in the state prison at San Quentin. The appeal is from the judgment and the order denying the motion for a new trial.

1. When the information was filed it charged that the crime was committed within one year prior thereto, upon one Augusta Schwall, a female child of the age of fourteen years. Upon demurrer to the information the court permitted the district attorney to amend the information by alleging that the crime was committed "on or about the twentieth day of May, 1917," and striking out the words "within one year prior thereto." In his opening statement the district attorney mentioned two different days on which the criminal act was done, the second being a few days after the first. Defendant's attorney thereupon demanded that the district attorney designate the day of the month and hour of the day specifically upon which he relied. The district attorney replied: "The burden is upon us to elect one particular act of sexual intercourse here, so we elect the first act, the act which I have stated occurred the day that Wademan was there assisting her brother, Joe, haul hay, while Augusta Schwall's father was over at Wademan's house pumping water and while the brother, Joe Schwall, went over there to hitch up Wademan's horse and feed the hogs. . . . The Court: Of course, if they can state the date it should be stated, but in the absence or inability to state the date, then it could only be stated by circumstances, as I

understand it.  Mr. McMillan (defendant's attorney) : Do we
understand that he can state that he relies upon a circum-
stance occurring in the month of May—as broad as that?
Mr. McDonald : I have confined it to the noon hour upon the
day that they were hauling hay and described that so the
defendant could not be prosecuted and convicted of the
same crime.  I can't state the precise day.  Mr. McMillan :
It is alleged in the information that this act was committed
on or about the twentieth day of May.  Mr. McDonald :
It was some time in that neighborhood but I could not
say that was the day.  Mr. McMillan : How close?  Mr. Mc-
Donald : I don't know.''  Defendant's attorney suggested
that he might be desirous of proving an *alibi* in the case.
''Such a situation confronting us, we would be entitled to
have before us the exact day, the exact hour of this circum-
stance that the prosecution relies upon.''  The district at-
torney stated that at the preliminary hearing the prosecuting
witness connected the act in point of time with reference to a
picnic which was shown to have been held at Nicolaus on
May 27th, and that her recollection was that the second act
was about three days before that and the first act about three
days before the second.  ''She could not swear to the precise
day at the preliminary and she has never been able to state
it since, and I have described the act as near as I could, so
he knows the occasion, and I don't see what more could be
asked. . . . The Court: Of course, with what there is before
the court, the court can do nothing but deny the motion.  It
might be that the court could cure the situation subsequently
if evidence would show to the court that this matter could be
more clearly defined, and if it can be I will again insist upon
the district attorney more clearly defining it.  As the matter
stands now I have nothing before me upon which I could
act.''  Defendant renewed the motion at the close of the testi-
mony in chief of the prosecuting witness.  ''Mr. McDonald : I
think the testimony shows conclusively that I cannot name
the date.  I have described the date to the best of my ability.
The Court: Yes, I think the evidence has not revealed to the
court any more than the court had at the outset as to the
date and the statement made by the counsel is that it is as
near as he can tie to the date.  The motion is denied.''

The evidence established with certainty the date of the
picnic referred to as May 27th.  The prosecuting witness

fixed ·the date as the 24th or 25th of April when she was last
"unwell" prior to her alleged sexual intercourse with defend-
ant; the particular circumstances and events immediately
surrounding the act, the hour, defendant's presence at the
Schwall home on the occasion, were described; defendant's
admission that he was there at the particular time when the
act was alleged to have been· committed under the circum-
stances as described by the district attorney; all this appeared
and that on no other occasion did the same or similar condi-
tions surround the parties. It might seem strange that
neither her father nor her brother could remember or fix the
date of these happenings more definitely than they did—
that is, prior to the picnic a few days and while defendant
was working for them in haying time, but they testified that·
they could not designate the exact day of the month. Their
pay-roll, if they had one, would show that defendant worked
for them certain days, but would not necessarily make note
of any fact connecting the particular circumstances testified
to with any particular date. That the prosecutrix failed to·
remember the date is not surprising. The evidence showed
that she offered no resistance and yielded without reluctance;
that she did not mention the affair until her pregnancy made
concealment of her condition impossible. Considering all
the circumstances and that defendant admitted being· alone
with her in the house, under the circumstances described,
which at no other time is it pretended again occurred, we find
ourselves compelled to hold that the time and place were fixed
with sufficient certainty, or to hold that this particular char-
acter of crime cannot be made out unless the day and hour
are selected and definitely shown by direct evidence. We
cannot subject the trial courts to so rigid and inflexible a rule
as is contended for by defendant. Furthermore, inasmuch
as he admitted being present on the only occasion when all
these circumstances concurred, an *alibi,* obviously, could not
avail him. His situation would have been no more favorable
to him and no different had the day been fixed and he had
admitted being there on that day. We must hold that the
motion was properly denied.

2. And this brings us to the only ground for reversal open
to him, aside from certain further alleged errors of law later
to be noticed, namely, that the evidence was insufficient to
justify the verdict. This contention is based upon the alleged

inherent improbability of the testimony of the prosecuting witness. Her testimony was that she was at the time doing the housework of her home; her mother was dead and her sister, a year younger than herself, was away; her father was at defendant's place, about half a mile distant; her brother, Joe, was working in the hayfield with defendant, helping him; one of the young children was at school and the other was with its father. At noon her brother, Joe, and defendant came to the house; Joe had occasion to go back to the field, which he did on his bicycle; that the witness was on the back porch near an opening to the cellar and defendant attempted to have sexual intercourse with her there, but for reasons he explained and because Joe was liable to return any moment, which in fact he did in a few minutes, defendant desisted; that while at dinner defendant complained of having a headache and spoke of some chores to be done at his home and that he had promised to go over and hitch his horse to a buggy for his wife; that Joe told him to lie down on the couch and he would take his wheel and run over and do his chores and hitch up the horses; that defendant lay down on the couch and Joe went to defendant's house and witness took a story-book, went into the room where defendant was lying and commenced reading. She testified that defendant said: " 'Is there a bed in the next room?' and I said, 'No,' and he looked and there was and he said: 'Won't you go in and lie down on the bed?' and I said: 'No, I have to finish reading this book.' He says, 'You have got time to finish that some other time.' So we lied down on the bed and he opened his trousers and lifted up my dress and he asked me if I liked to do this and I says I didn't know, and he says, 'Well, you ought to know; you might as well say yes.' " The witness then stated that defendant had sexual intercourse with her. She testified to acts of improper familiarity with her before this time and afterward, and that two or three days later he had sexual intercourse with her again on the sleeping porch of the house under circumstances described by her and while her little brother aged eight and little sister aged four were playing in the dooryard. She testified that on this occasion defendant came to the house unexpectedly and found her alone; that he accomplished his object and "tiptoed across the porch" and quietly slipped away without the children seeing him.

As to the circumstances surrounding the first act. there was corroboration, but as to defendant's connection with the act itself there was no corroboration. The witness was delivered of a child on January 27, 1918, which established the fact that some person had sexual intercourse with the prosecutrix but did not tend to prove that defendant was the father of the child. It is now urged that the story told by the prosecuting witness is inherently improbable; that she first explained her condition by stating that two hunters came along and one of them forced her to submit to his embraces, but it appeared that at the time she made this statement she finally, under some pressure, said that defendant was the cause of her situation; and, particularly, it is urged that the child appeared to be a full nine months' child, as testified by Dr. Fairchild, the physician who officiated at the accouchment, and hence defendant could not be the father, since the testimony did not fix the first act at an earlier date than about May 20th, or 252 days before the birth of the child, whereas the birth of a normal child usually occurs after from 270 to 280 days from the date of conception, and that the evidence was that this child was normal in all respects. The defendant did not testify in his own behalf.

It is well settled by the decisions of the supreme and appellate courts of this state that a conviction may be had upon the uncorroborated testimony of the prosecuting witness although she may have made contradictory statements as to the person who had committed the criminal act and had otherwise made contradictory statements. Where there are no corroborating circumstances, in cases of this kind, the reviewing court should scrutinize with discriminating care the testimony given by the prosecuting witness. The defendant may be so placed as to be at the mercy of the prosecutrix and may have no means of disproving her testimony except by convincing the jury that she has committed downright perjury—a last resort not easy of accomplishment. Our supreme court, in some of the earlier cases, cited by appellant, has ordered reversals on the ground that the testimony of the prosecuting witness on its face convinced the court that the jury in believing it must have been governed by passion and prejudice. We are unable to discover in the testimony given in the present case by this young girl improbabilities inherent or otherwise. Viewing carefully all the facts and circumstances as narrated

by her, as we have done, we can find no motive for falsely accusing defendant; the two families were close neighbors and frequently interchanged visits and were on the most friendly terms; this girl was not shown to have had intimate or dubious relations with any young men. So far as appears, she was a simple, unsophisticated girl of fourteen years (the court spoke of her as "of tender years and not overly bright"), who apparently did not comprehend the consequences or full meaning of the act to which she seems willingly to have consented. The friendly relations existing between these families should have restrained defendant from bringing this shame and disgrace upon this young girl. So far from the story related by Augusta Schwall being inherently false, it presents to our minds an instance, quite too common, of the power by which some men's sexual passions obtain complete mastery of their conscience and in seeking their gratification no heed is given to the consequences accruing to their victims.

The expert testimony as to the normal period of gestation was not such as conclusively showed that the birth date of the prosecutrix' child was wholly inconsistent with the fact that conception may have taken place at the time fixed by the child's mother as the time when she had sexual intercourse with defendant. The testimony was sufficient to leave with the jury the determination of the fact involved in the point made by defendant. We think the verdict had sufficient support.

3. Error is claimed in permitting evidence to be introduced of familiarity "not actually amounting to acts of sexual intercourse," defendant contending that any acts short of this are inadmissible. Defendant relies upon *People* v. *Castro,* 133 Cal. 12, [65 Pac. 13], citing *People* v. *Soto,* 11 Cal. App. 431, [105 Pac. 420], to the effect that no case has extended the rule in the Castro case. The district attorney cited *People* v. *Koller,* 142 Cal. 623, [76 Pac 500]. The view of the question taken by the learned trial judge was that it being conceded that prior and subsequent acts of sexual intercourse were admissible as showing an adulterous disposition, any lascivious or other acts of familiarity tending to awaken or promote sexual desires were alike admissible. Logically, this seems to be sound reasoning.

4. It is claimed that the court erred in making statements as to the age of the prosecutrix and in declaring that it would make no difference if half a dozen men had had illicit intercourse with her. During the course of a colloquy in which the court, the district attorney, and defendant's attorney took part, the court incidentally referred to the prosecutrix as of tender years; and in connection with the evidence relating to fixing the date of the act of sexual intercourse the court remarked that "the witness is not overly bright." The undisputed fact was that the prosecutrix was fourteen years of age. That the court referred to her as of "tender years" could not have prejudiced defendant's case. The remark that "the witness is not overly bright" was made in connection with a ruling as to relaxing the rule somewhat which forbids leading questions. In the connection used we do not think the remark was prejudicial.

Furthermore, the court immediately directed the jury to pay no attention to the remarks and, in its charge, instructed the jury that they were "not to consider in any manner any remark made by either counsel or by the court, concerning the admissibility of testimony or the striking out of testimony improperly admitted."

The objection made by the defendant to the questions put to the prosecutrix: "Did you ever have an act of sexual intercourse with anyone else than Fred Wademan?" and "Who is the father of that child?" was sustained by the court. Defendant seems to assume that this ruling precluded him from making proof that some other person was the father. He made no such offer during the trial. The ruling was not so intended and had no such effect. The court held that it was not a part of plaintiff's case and was not at that point admissible. Whether right or wrong in the ruling defendant was not prejudiced by it.

5. A reversal is demanded because of error in giving people's instruction No. 8, as follows: "You are instructed that while the crime is alleged, in the information, to have occurred on or about the twentieth day of May, 1917, it is not necessary that the prosecution prove that the crime was actually committed by the defendant precisely on the twentieth day of May, 1917. It is sufficient to sustain the charge if you be convinced beyond a reasonable doubt, from the evidence in the case, that the crime alleged was committed

at any time within three years immediately preceding the filing of the information, which filing was had and done on the twenty-seventh day of December, 1917.''

It is contended that in every substantial part of this instruction it is similar to the one considered as error in *People* v. *Elgar,* 36 Cal. App. 114, [171 Pac. 697], and which was held not to be cured by a subsequent instruction. In the Elgar case there were two acts of rape committed, one about May 6 and the other about May 14, 1917. The district attorney selected the first act as the one relied on for a conviction. After giving the instruction substantially as in the present case, that it is sufficient to show that the crime was committed at any time within three years immediately preceding the filing of the information, the court gave an instruction to the jury that ''If you believe . . . that the said Jim Elgar, on or about the sixth day of May 1917, . . . did willfuly . . . have and accomplish an act of sexual intercourse with and upon the person of one Clementina Elgar, you should find him guilty as charged in the information.'' The court held on appeal that this latter instruction did not obviate the injury done by the other instruction.

It is very plain that if the rule requiring the people to select the day has any virtue or force this instruction No. 8, standing alone, would seem to be in conflict with and is in violation of this rule.

The attorney-general does not defend the instruction. His claim is that instruction No. 9 must be read with No. 8 and when so read ''it is apparent that the instruction No. 8 is not improper in the case, but only has the effect of showing that the offense of rape stands alive and subject to prosecution for a period of three years after the date of the alleged act.''

Instruction No. 9 is as follows: ''You are instructed that in the charge of rape, other acts of sexual intercourse between the accused and the female whom he is accused of having raped occurring both before and after the principal act charged may be introduced in evidence as tending to sustain the act of sexual intercourse charged, that is, the particular act upon which the defendant is being tried. In other words, acts of sexual intercourse between the parties may be shown by the prosecution to prove that the parties are lewdly inclined and that the barriers of modesty have been broken

down with reference to each other but not primarily to prove habitual or continuous criminality or other offenses.

"But where several acts of sexual intercourse are claimed, by the prosecution, to have occurred between the defendant and a particular girl under the age of consent, the prosecution is required at the commencement of the trial, to select some one particular act of sexual intercourse upon which it relies to make good the allegation of the information.

"In the case before us the prosecution has selected one particular act of sexual intercourse which it claims occurred between the defendant and Augusta Schwall. This one particular act is designated and described by the prosecution to be the first act of sexual intercourse which it is alleged was actually accomplished by the defendant with Augusta Schwall. It is further described by the prosecution to be the act which it is alleged was committed during the noon hour at the home of Augusta Schwall, at the time her father was alleged to have been at the home of the defendant for the purpose of pumping water with a gasoline engine and while her brother Joe Schwall went to the home of the defendant during said noon hour for the purpose of hitching up the defendant's horse and attending to his hogs.

"Such being the case, before you can find the defendant guilty you must find that he accomplished an act of sexual intercourse with Augusta Schwall on the particular occasion which the prosecution has selected. If you find that other acts of sexual intercourse or other lewd acts were committed by the defendant with Augusta Schwall you may consider them for the purpose of determining whether or not he committed the particular act of sexual intercourse with Augusta Schwall which the prosecution has selected. But you can consider such acts for no other purpose."

The attorney-general says: "A consideration of the last twenty lines of said instruction No. 9 will show that a verdict of guilty could only be had by the jury by reference to the offense charged (made specific by election stated) 'on the particular occasion which the prosecution has selected.'"

There was no evidence of sexual intercourse except upon the two occasions in May, the acts being within five days of each other. The jury were very clearly told that the act relied on must be and was selected by the prosecution, and that the act thus selected must be established to their satisfac-

tion beyond a reasonable doubt or they must acquit the defendant, and that evidence of other acts was admissible only for the specific purpose explained by the court. When considered together, as they should be and doubtless were by the jury, no person of ordinary intelligence could fail to understand that conviction must rest entirely, if at all, upon evidence directed to the particular act selected by the prosecution. We cannot doubt that the jury so understood the instructions.

6. Error of the court is assigned for refusing to give an instruction to the jury not to be influenced by the presence of the child, citing *People* v. *Stanley,* 33 Cal. App. 624, 629, [166 Pac. 596]; and in declining to instruct the jury to disregard the question asked of the prosecutrix by the district attorney: "Who is the father of that child?" (Citing *People* v. *Soto,* 11 Cal. App. 436, [105 Pac. 420].)

It appeared that while the prosecutrix was on the witness-stand her baby was brought into court from an adjoining room. She testified that it was her child and was born on January 27, 1918. In the course of the examination the district attorney put to her the question: "Who is the father of that child?" Defendant objected to the question and also asked the court to instruct the jury to disregard the question as misconduct of the district attorney in asking it. The court seems to have regarded the matter as rebuttal and not open to the prosecution unless evidence was introduced tending to show that some man or men other than defendant had had sexual relations with the prosecutrix; that should the evidence make it admissible for the prosecution to put the question, it would be allowed. The request made by defendant for an instruction to the jury at that time included a request that the jury be instructed "not to be influenced or their sympathies captivated" by the presence of the child; that the child could be exhibited for the sole purpose of proving the *corpus delicti* and not to prove that the defendant was its father. The court refused the request, stating that some of the matters he was willing to instruct upon as requested, but that others of them would be error. There was no circumstance connected with the presence of the child having any tendency to show that defendant was its father and that the child was there for any purpose other than to show that it was the child of the prosecutrix. There was no evidence in the case offered

by defendant that had any tendency to show that some person other than defendant might have been or was the child's father. We do not think its presence in court alone made it necessary for the court to instruct the jury as to the limit to which inferences might be indulged from such presence.

7. Error is assigned in giving for the plaintiff instruction No. 11, reading as follows: "You are instructed that if you find from the evidence in this case beyond a reasonable doubt that the defendant, Fred Wademan, committed the act of sexual intercourse with the said Augusta Schwall, on the occasion selected by the prosecution at the beginning of the trial, and you further find that said act of sexual intercourse was committed within three years prior to the filing of the information and that the said Augusta Schwall was a female person under the age of eighteen years at the time the act was committed, and you further find that the said Augusta Schwall was not the wife of the said Fred Wademan at the time the act was committed, then you must find the defendant guilty of the crime of rape as charged in the information.''

The first error pointed out is that the instruction omits a definite statement of the venue of the crime and that when the court undertakes to recite the facts contained in the information it must include every element necessary to sustain a conviction. The uncontroverted testimony was that the act was committed in Yolo County, and while it may be true that the jury were at liberty to find this testimony to be untrue, we think the instruction by its reference to the act as selected by the prosecution sufficiently pointed to the place where the offense was committed.

The point most seriously urged is that the court instructed the jury in effect "that if they should find that the girl was under the age of eighteen years, they must find that she was of the age stated in the information, to wit, fourteen years,'' whereas, under section 264 of the Penal Code, as amended in 1913, "juries are now required not only to find whether or not the prosecutrix was under the age of eighteen years, but necessarily they must find whether or not 'the female is over the age of sixteen years' ''; that whenever the offense is charged under subdivision 1 of section 261 of the Penal Code, there must be a finding, which the jury alone can make, as to

whether or not "the female is over the age of sixteen years, and under the age of eighteen years."

The legislature, by the amendment of section 264, lodged a discretion with the jury to determine whether the defendant is guilty of a felony or a misdemeanor where in case of rape the female is over the age of sixteen years and under the age of eighteen years. Such, however, being the case, "to take the question of age away from the jury," continues the brief, "certainly works a very substantial injury to a defendant, for it deprives him of an independent finding of the jury which might subject him only to a misdemeanor punishment."

The uncontradicted testimony of John Schwall, father of the prosecutrix, Augusta, and her testimony also, was that she was born March 27, 1903, and her age, therefore, was fourteen years and two months at the time the offense was committed. The verdict of the jury was: "We, the jury impaneled to try the above-entitled cause, find the defendant guilty of rape as charged in the information."

If the information had charged that the rape was committed upon a female under the age of eighteen, not giving her age, or if it had charged that she was over the age of sixteen years and under the age of eighteen years, it might be said that the information was laid under this section and that it was thus made applicable. But where the information distinctly charges that the female was under the age of sixteen and the uncontroverted evidence so established the fact to be and the jury by their verdict found the defendant guilty as charged in the information, the amended section 264 has no application. If in such a case the question of age was controverted and the evidence conflicting, there would seem to be some force in the contention that the defendant would be entitled to a finding by the jury as to the fact in order that he might enjoy the right to have the jury determine whether he must suffer as being guilty of a misdemeanor or the greater penalty attached to a felony. As we understand section 264, it is only where "the female is over the age of sixteen years and under the age of eighteen years" that the jury is called upon to "determine by their verdict whether the punishment shall be imprisonment in the county jail or in the state prison."

We think the verdict was sufficient without being supported by a separate or other finding as to the age of the prosecutrix.

8. Error is claimed in refusing defendant's instructions Nos. 21, 28, 29, 32, and 33. These instructions are not set out in appellant's brief and the only comment made upon them respectively is: No. 21 "should have been given," citing a case; "No. 28 should have been given under the rule laid down in" a case cited; "No. 29 was a proper instruction to be given as laid down in" a case cited; "No. 32 should have been given," citing cases; "No. 33 was directly within the rule laid down in" case cited. We do not think we are called upon to test the sufficiency of appellant's assignments of error thus made. We are entitled to know why he believes a particular instruction is violative of some rule or principle of law found in a decided case. Assuming, as we may in the absence of comment by appellant, that the purport of these instructions is correctly stated by the attorney-general, there would appear to be no error in refusing to give them.

9. Misconduct of the district attorney in his closing argument to the jury is assigned as error. One of the instances relied on is the reference made by the district attorney to the generally well-known Slaughter case. Stating who Slaughter was and that he was found guilty of rape, the district attorney said: "Is there any reason to believe this man is a better man than the Rev. Madison Slaughter?" The record shows the objection, but appellant made no motion to strike out or request that the remarks be disregarded.

The only other alleged error under this head called to our attention is contained in the following remarks of the district attorney: "Now, gentlemen of the jury, I had faith when I took you on the jury, I still have faith in you, and I think there is only one thing you can do to do justice in this case, and that is to render a verdict of guilty. Gentlemen of the jury, I believe I am conscientious in saying it, I am not saying it because I want to win this case, because I would not be guilty of sending an innocent man to prison, but as sure as there is a God in Heaven, that man is guilty. The officers in this case have done all we can do. The rest remains with you. If you want to do justice in the case, do justice by that girl, do justice by that child that is brought into the world by the defendant, do justice by that girl's family and do justice to society in general, there is only one thing for you to do and that is to render a verdict of guilty in this case, notwithstanding that man's position in the community. I

would not ask you to do something I would not do myself, but after I have heard the evidence in the case, there is only one conclusion I have arrived at. If you won't find this man guilty, don't ever sit in a rape case, because that is all the testimony you may get in a case of this kind. You will never find the crime committed with people standing about. You have got to believe the story of the girl in a rape case or you will never render a conviction. The girl's testimony is undisputed. If her story was contradicted, you might be in doubt, but the defense has left the story stand where it is unimpeached and undisputed, and when you go into the jury-room to consider whether the girl was telling the truth, ask yourself this question: 'Is her testimony contradicted by a single witness in this case?' and I say 'No.' Under those circumstances, gentlemen of the jury, you have got to believe that girl, you cannot do anything else. Her story is true, it rings true, and she is telling the truth. I am not going to argue the case further. I am going to submit it to you for your judgment. Gentlemen of the jury; I have all confidence in you that you will do justice in this case and render a verdict of guilty.''

The point emphasized is that the district attorney violated the provisions of section 1323 of the Penal Code ''by indirection,'' citing *People* v. *Morris,* 3 Cal. App. 1, [84 Pac. 463] ; *People* v. *Tylor,* 36 Cal. 522; *People* v. *McGungill,* 41 Cal. 429; *People* v. *Sanders,* 114 Cal. 216, [46 Pac. 153]. Referring to the district attorney's remarks, appellant says: ''The fact that he cunningly conveyed this thought to the jury, without making a direct reference to the defendant's omission to testify, should not shield him from the rule that has been so frequently laid down.''

We do not think appellant's attorney quite justified in referring to the district attorney's remarks as cunningly intended to remind the jury that the defendant had not testified. But it is with the probable effect on the jury the reference to the matter was likely to have which we are to consider. The defendant is not required to testify in a criminal case and the statute is intended to prevent the prosecuting officer from taking advantage of the defendant by reason of his failure or refusal to testify. The reviewing courts have very properly held it to be prejudicial error for the district

attorney to call the attention of the jury to the fact that the defendant has not testified in his own behalf and to comment on the fact as warranting the inference that his silence is evidence of guilt. The district attorney should not be permitted by indirection to accomplish what the law frowns upon when done directly. And where his address to the jury shows on its face that the district attorney intended to invite attention to the failure of the defendant to take the witness-stand and deny the charge and had the apparent effect to emphasize such fact and suggest an inference of guilt, such conduct should receive quick condemnation. We do not think, however, it can fairly be claimed that the district attorney intended to invite attention to the fact of defendant's not having testified or to suggest any inference deducible from the fact. In speaking of the testimony of the prosecutrix in the way he did he had a right to claim that it was uncontradicted and that no witness had been called to impeach her testimony. The only reference to the matter came from the following instruction given at defendant's request: "The court instructs the jury, that while the statute of this state provides that a person charged with crime may testify in his own behalf, he is under no obligation to do so, and the statute expressly declares that his neglect to testify shall not create any presumption against him. The jury should decide the case with reference alone to testimony actually introduced before them, and without reference to what might, or might not, have been proved, if other persons had testified."

It is impossible to withhold from the jury the fact itself. The most that can be done for the defendant's protection is to instruct the jury as was done and to restrain the district attorney from using the fact to defendant's prejudice. We cannot say that the remarks of the district attorney were so far prejudicial as to justify a reversal.

10. Appellant urges that the court committed error in denying the motion for new trial, it appearing at the hearing of the motion that one of the jurors, a woman, "examined the prosecutrix' child during a recess of the court," thereby receiving evidence out of court.

It appeared from affidavits in support of the motion that a member of the jury, Albertina Graves, entered the witness-room during the trial and while the court was at recess, where affiant and other witnesses were congregated; that in the room

was Mrs. Metzger, who at the time was holding the prosecutrix' baby; that the juror stopped near Mrs. Metzger and looked at the baby's face for a short time and passed on to make an unimportant inquiry from another person in the room, and then left the room.

Albertina Graves made affidavit that she went to this room to make inquiry from a Miss Ogden, a waiting witness, as to the address of a person she wanted to see; that she knew Mrs. Metzger, but did not know Miss Ogden, and that she asked Mrs. Metzger to point out Miss Ogden; "that at that time the said Mrs. Metzger had the baby referred to in the aforesaid affidavits in her lap; that affiant is informed and believes that said baby was the baby of Augusta Schwall; that said baby was wrapped up in a blanket; that the face of said baby was exposed; that affiant did not throw back the blanket covering the said baby's face; that affiant did not examine the face of said baby but only looked at it casually, remarking to the said Mrs. Metzger at the time, 'What a nice big baby!' or words to that effect; that to the best of affiant's memory the eyes of said baby were closed; that the hair of said baby and the top of its head were covered; that affiant did not look at said baby for a few minutes, but only looked at it casually for about a half a minute; that in looking at said baby affiant did not do so with any purpose of ascertaining or endeavoring to see whether said baby resembled the defendant in the above-entitled action or for any other purpose concerned in said action; . . . that affiant made no remark of any kind to the said Mrs. Metzger or to the said Miss Hazel Ogden about the features or appearance of said baby, nor to any of the jurors in the case, nor did affiant make any remark to any of the jurors in said case about said baby prior to the verdict; that affiant only looked at said baby casually and not with the purpose of using it as evidence; that affiant rendered her verdict in said case purely and simply upon the evidence introduced into court and before the aforesaid court and jury in said action."

Several jurymen deposed that no mention of having seen the baby was made by the jury-woman Graves in the jury-room. We do not think it can be said that she "received evidence out of court" in the sense which the law deems such conduct prejudicial.

11. When the hour for sentencing the defendant arrived the court inquired whether he had anything to say why sentence should not be passed. His attorney stated that he desired to move for a new trial, and thereupon served and filed his motion stating the grounds. The minutes show that the proceedings thenceforward consisted of argument as to the time when the motion would be heard and other matters pertaining to the motion. Subsequently, on March 6, 1918, the motion came up and was denied. "The Court: There is nothing further to do but to pronounce the ordinary sentence. You may stand up, please, Mr. Wademan. It is the judgment of the court and the sentence of the law that you be taken to state's prison at San Quentin, there to be confined, or to be confined in such prison as the prison directors shall decide, and that you shall there remain for not less than one nor more than fifty years, which time is to be fixed by the prison board according to law."

On the same day the judgment was entered and read as follows:

"The district attorney, with the defendant and his counsel, Theodore A. Bell, Charles W. Thomas and R. B. McMillan, came into court. The defendant was duly informed by the court of the information filed against him for the crime of rape on the 27th day of December, 1917, of his arraignment and plea of not guilty to the charge in the information, of his trial by a jury and the verdict of the jury of guilty as charged in the information, of his motion for new trial and the order denying said motion.

"The defendant was then asked if he had any legal cause to show why judgment should not be pronounced against him. To which he replied that he had none. And no sufficient cause being shown or appearing to the court thereupon the court renders its judgment: That whereas the said Fred Wademan has been duly convicted in this court of the crime of rape:

"It is therefore ordered, adjudged and decreed, that the said Fred Wademan be punished by confinement in the state prison of the state of California, and that the said Fred Wademan be taken to the warden of the state prison at San Quentin. The defendant was then remanded to the custody of the sheriff of the county of Yolo, to be by him delivered into the custody of the warden of said state prison at San

Quentin, state of California, to be confined for a period of from one (1) to fifty (50) years.''

For the first time in the proceedings the point is made in defendant's brief on appeal that before sentence was pronounced he was not informed of the nature of the charge against him, etc., as required by section 1200 of the Penal Code. In *People* v. *Walker*, 132 Cal. 137, [64 Pac. 133], it was held that the provisions of this section are mandatory. In that case the defendant made a motion after judgment that the minutes be corrected and the judgment vacated. The bill of exceptions which the lower court certified to be correct showed that the requirements of this section were not complied with. The motion was denied and on appeal the supreme court reversed the order and directed that the cause be remanded ''with directions to the superior court to arraign the defendant for judgment and to proceed thereupon as it may be advised.''

In the present case no such motion was made; the recitals in the judgment show that the requirements of the section were complied with. In the absence of any showing to the contrary, other than the mere silence of the minutes, we must presume that the judgment speaks the truth. (*People* v. *Perez*, 87 Cal. 122, [25 Pac. 262] ; *People* v. *Johnson*, 88 Cal. 171, [25 Pac. 1116].) Furthermore, every fact mentioned in the section was known to the defendant. He was personally present when sentence was pronounced and made no objection when called upon except to move for a new trial. We think section 4½ of article VI of the constitution covers the case. If the cause were remanded there is but one sentence under the indeterminate sentence statute which the court could enter. Upon the record we cannot say there has been a miscarriage of justice. When the Walker case was decided section 4½ of article VI was not in existence. (See *People* v. *Tomsky*, 20 Cal. App. 672, [130 Pac. 184].)

It is finally contended that the sentence is void, under the indeterminate sentence law (Stats. 1917, p. 665), ''as there is no minimum punishment fixed or prescribed for rape.''

We had this question before us in the case of *People* v. *Rossi*, 37 Cal. App. 778, [174 Pac. 916], and, upon the authority of that case, the portion of the judgment in this case which directs that the defendant be imprisoned for a period of from one to fifty years is stricken from said judgment, and,

as so modified, the judgment and order appealed from are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 29, 1918.