[Crim. No. 5260. First Dist., Div. 1. Aug. 29, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RAFAEL GARCIA ROMERO, Defendant and Appellant.

James Edward Cooke, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Lawrence R. Mansir, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from a judgment which sentenced him to imprisonment following his conviction by jury verdict of burglary in violation of section 459 of the Penal Code, which by stipulation, was fixed as of the second degree. He also was charged with an admitted four prior felony convictions.

On his appeal he asserts the following errors: (1) the receipt of evidence of ''prior convictions'' in the prosecution's case in chief; (2) the receipt of evidence of a blood test to prove that defendant was not intoxicated at the time of the alleged burglary; (3) comment by the prosecution on the defendant's failure to testify; and (4) failure to properly arraign the defendant for judgment.

An examination of the record reflects that evidence of other offenses was properly received for the light it shed on defendant's intent, method of operation, knowledge and plan; and that there was no prejudicial error in the other particulars advanced by defendant.

The facts are brief and not in dispute. On March 7, 1965, at 1 o'clock in the morning, officers of the San Jose Police Department apprehended the defendant in Clancy's Restaurant and arrested him for the crime of burglary. The officers had responded to a radio call that a burglary was in progress and upon arriving at the scene found the defendant lying on the floor in the pantry. A screwdriver was found underneath a water heater located two feet from where defendant had been lying. The area had been cleaned and mopped the day before, and no screwdriver was found there at that time. When the owner locked up his premises, no one was inside.

The evidence tended to show that the defendant had made entrance into the restaurant by prying open the locked window in the women's restroom. Pry marks located on both the women's and men's restroom windows were consistent with marks made by the screwdriver. There were pry marks on the cigarette machine. When the owner locked up there had been no pry marks on the cigarette machine or on the windows. The defendant's car was found parked in the neighborhood.

At the time defendant was arrested he claimed he did not remember how he got into the restaurant and because he gave unresponsive answers to the officers' questions, they believed he was feigning drunkenness. Therefore, they obtained a blood alcohol test when they arrived at the police station.

The defendant did not testify, and his entry of the premises was not contested. It was contended on his behalf that he was intoxicated and did not have the mental capacity to form the specific intent necessary for burglary. The jury was requested to find him guilty of no more than a trespass. To this end the defendant produced the testimony of his wife; of his wife's sister; and of the wife of his wife's brother to show his activities and state of intoxication on the day preceding his arrest and his general reaction to the consumption of alcoholic beverages.

*Evidence of prior crimes :*

The prosecutor, out of the presence of the jury, offered to prove that the defendant was involved in three prior burglaries which were committed under circumstances similar to those under which he was apprehended in the instant case. The defendant's objection was overruled.

Testimony was then adduced that on April 15, 1963, defendant was found in the premises of a vending machine company; that the outer door of the premises had been pried open leaving marks on the door frame of which a photograph was introduced below; that at the time of defendant's apprehension he was working on an inner divided window with a screwdriver which he threw on the floor; that pry marks, of which another photograph was also produced, were found on an inner door through which entry had been effected to an office where a cash box in a pried-open desk drawer had been rifled; and that defendant's car was found about one block away.

Further testimony showed that on August 28, 1958, a deputy sheriff responding to investigate a reported market burglary noticed a car, which subsequently proved to be the defendant's, in the vicinity of the scene of the offense; that he found one-quarter inch pry marks on the market door which had been forced open; that the deputy was advised of the nature of the property missing; that he then found that the car which he had observed was gone; and that two hours later he stopped the same car, arrested defendant who was driving it, and found the missing articles and a screwdriver in the car.

An admitted accomplice of defendant, who had served time

for the offense, testified that in October 1960 he and the defendant entered the same premises in which defendant was apprehended in this case through the rest room window after prying it open; that the defendant pried open the cigarette machine and they took the money and the cigarettes; that they left in the defendant's car which was parked about a block away; and that they were apprehended the same night with the loot in their possession.

The prosecutor called a probation officer to testify in regard to a conversation he had with the defendant in reference to the 1963 offense. When the officer stated that the conversation ensued after the defendant had been found guilty following a jury trial, the court on motion of the defendant struck the answer and admonished the jury to disregard the testimony but denied defendant's motion for a mistrial. Following an unreported conference out of the presence of the jury the prosecutor abandoned his attempt to bring out admissions or declarations which the defendant had allegedly made at that time. (Cf. *People* v. *Kelley** (Cal.App.) 49 Cal.Rptr. 751.)

The court properly instructed the jury that the foregoing evidence was received for a limited purpose only.[1]

Defendant relies upon the prohibition against mentioning prior felonies when the allegations by which they are charged have been admitted. ■ "The law forbids the prosecutor or the clerk to make reference to the alleged prior felony unless the defendant denies it and the prosecution is required to prove it by proper evidence (Pen. Code, §§ 1025, 1093). ■ The law also forbids the prosecutor even to ask a de-

---

*A hearing was granted by the Supreme Court on April 26, 1966.

[1] "Evidence of other offenses. Evidence was offered in this case for the purpose of showing that the defendant committed other crimes than the one of which he is accused and for which he is on trial in this action, namely, it is claimed that he committed three other burglaries. Such evidence was received for a limited purpose only. Not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of a crime charged against him in this action. You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case. The value, if any, of such evidence depends on whether or not it tends to show: 1. That the defendant entertained the intent which is a necessary element of the alleged crime for which he now is on trial; or 2. That the defendant was familiar with or possessed the means alleged to have been used in the commission of the crime of which he is accused in this action; or, 3. That the defendant possessed knowledge that might have been useful or necessary to the commission of the crime for which he is now on trial; or, 4. That there existed in the mind of the defendant a plan, scheme, system or design, into which fitted the commission of the offense for which he now is on trial." (See CALJIC No. 33.)

fense witness whether he has been convicted of a felony unless the question is asked in good faith with the expectation of proving that there was such a conviction.'' (*People* v. *Fields* (1965) 235 Cal.App.2d 1, 5, fn. omitted [44 Cal.Rptr. 842].)

Defendant's argument is answered by *People* v. *Grimes* (1952) 113 Cal.App.2d 365 [248 P.2d 130] wherein it is stated: ''At the trial defendant admitted the prior convictions of felonies as charged, and did not testify. The prosecution offered evidence of similar offenses to that charged, under the claim that such offenses were similar in their commission, and the *modus operandi* was so much like the method used in the instant case as to be admissible under the general principle enunciated by our Supreme Court in *People* v. *Peete*, 28 Cal. 2d 306 [169 P.2d 924], and cited cases. The court permitted the proffered evidence, under an instruction limiting the consideration of the evidence by the jury for the purpose only of showing the identity of the person who committed the alleged crime, if it was committed; that the defendant entertained the necessary intent; and that there existed in the mind of the defendant a plan, scheme, system or design, for the commission of the offense, and not to prove other and distinct offenses. . . . It is defendant's contention that the prior conviction of burglary on August 28, 1943, as charged in the information and admitted by defendant, should not have been admitted in evidence since defendant admitted this charged prior conviction. He cites in support of this argument section 1025 of the Penal Code which reads in part that in case the defendant answers 'that he has suffered a previous conviction, the charge of the previous conviction must not be read to the jury, nor alluded to on the trial.' There is no merit to this argument if the facts of the previous offense come within the exception hereinafter noted. (*People* v. *Peete, supra,* p. 319.)'' (113 Cal.App.2d at pp. 368-369; and see *People* v. *Henderson* (1963) 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Peete* (1946) 28 Cal.2d 306, 314-320 [169 P.2d 924]; *People* v. *Shapiro* (1960) 180 Cal.App.2d 714, 718-719 [4 Cal. Rptr. 788]; and *People* v. *Kerns* (1955) 134 Cal.App.2d 110, 114-115 [285 P.2d 81]; and cf. *People* v. *Baskett* (1965) 237 Cal.App.2d 712, 715-718 [47 Cal.Rptr. 274].)

There was no error in receiving the evidence in question, and the court correctly instructed the jury in relation thereto.

The court also instructed the jury that a witness may be impeached by proof that he has been convicted of a felony. This instruction could not be applied to defendant because he

did not take the stand. It was necessary because his accomplice in the 1958 incident was so impeached.

*The blood test*:

Testimony was elicited from the officers without objection that blood was withdrawn from the defendant for a blood test in order to establish his state of sobriety because he seemingly was faking intoxication. The envelope in which the sample had been enclosed was marked for identification.

A criminologist employed by the county testified, also without objection, that the blood removed from the vial in the envelope contained .10 percent alcohol; that in a 150-pound man this would be the equivalent of four ounces of 100-proof hard liquor, or 4.6 ounces of 86-proof liquor, or about four or five 12-ounce glasses of beer. On cross-examination he stated that about .02 percent would be eliminated from the blood test per dram by the natural metabolism of the body; and that there was from a 45- to 50-minute delay before alcohol ingested would reflect its maximum percentage in the blood stream.

▇▇▇ Defendant claims error because the foregoing procedure compelled him to give evidence without the warning of his rights which is required by *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado* (1965) 62 Cal. 2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The record reflects that defendant was cautioned as required by those cases. It is unnecessary to determine whether later standards (cf. *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]) would be applicable, because the foregoing principles do not govern the taking of a blood test or the use of the results thereof as evidence. (*Schmerber* v. *California* (1966) 384 U.S. 577 [86 S.Ct. 1826, 16 L.Ed.2d 908] ; and see *Breithaupt* v. *Abram* (1957) 352 U.S. 432, 434-440 [77 S.Ct. 408, 1 L.Ed.2d 448] ; *People* v. *Graves* (1966) 64 Cal.2d 208, 210-211 [49 Cal.Rptr. 386, 411 P.2d 114] ; *People* v. *Kemp* (1961) 55 Cal.2d 458, 478 [11 Cal.Rptr. 361, 359 P.2d 913] ; *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 770 [312 P.2d 690] ; *People* v. *Haeussler* (1953) 41 Cal.2d 252, 257 [260 P.2d 8] ; *People* v. *Zavala* (1966) 239 Cal.App.2d 732, 737-738 [49 Cal.Rptr. 129] ; *People* v. *Bellah* (1965) 237 Cal.App.2d 122, 127-128 [46 Cal.Rptr. 598] ; and *People* v. *Huber* (1965) 232 Cal.App.2d 663, 670-673 [43 Cal.Rptr. 65].)

The foregoing makes it unnecessary to determine whether the failure to object at a trial held after the decisions in *Escobedo* and *Dorado* precludes the assertion of any error predi-

cated upon the introduction of evidence obtained in violation of the principles set forth in those cases. (See *People* v. *Palmer* (1965) 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 449] ; *People* v. *Campbell* (1965) 233 Cal.App.2d 38, 47-48 [43 Cal.Rptr. 237] ; and cf. *People* v. *Hillery* (1965) 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382] and *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17] with *In re Lessard* (1965) 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39].)

*Comment of the prosecutor*:

The testimony of the defendant's witnesses reflected that about 4 o'clock on the afternoon preceding his arrest defendant was drinking beer and playing cards with two other men, namely, Manuel Gonzales, his wife's brother, and one Alvarado, his wife's sister's husband; that defendant left with his son and Gonzales for the latter's house about 9 p.m.; and Alvarado went over later; that the latter brought his brother, and the four men drank beer and tequila and listened to records commencing about 9:30 p.m.; that defendant left about 10:30 or 10:45 to take his brother and his son home; that he returned at 12:10 or 12:15 a.m. and left shortly thereafter upon receiving a telephone call from his wife.

In closing argument the prosecutor commented as follows: "I put on all the possible witnesses I could at that particular period of time to show the element of the offense. What did the defendant do? What did Mr. Christenson do? Where is Manuel Gonzales? Here is a person that was the closest to the defendant at that particular period of time. He can show what his driving indications were. He could show what he did. He was in the room with him. What did he do? I don't want to infer that he hid behind the skirts of three relatives who weren't near him at this particular period of time, but he did not call in those persons that were the closest to him at that particular period of time. Is this reasonable? *He had the constitutional right to not take the stand. And he exercised that right. And that is his right.* But, where are these other people? Where is the filling of that particular gap? . . . These caps [*sic*] in here could have been filled in easily by Manuel Gonzales. Manuel Rinterria, Paul Alvarado, and why were not those people called? I can only ask you to infer that if they would have testified their testimony would have been adverse, or they would have perjured themselves. And they did not want to do this, or the defendant would have put on some explanation why they were not called. He did not do that, he hoped that I would forget about it and not mention it. And I

have not done that, ladies and gentlemen. I have not done that." (Italics added.)

No objection was made at the time these comments were uttered, but at the conclusion of the argument the defendant requested the court to instruct the jury that comments upon the defendant's failure to take the stand were improper and that the jurors should disregard them.

The court did thereafter, in the course of giving its other instructions to the jury, charge: "It is the constitutional right of a defendant in a criminal case where he may not be compelled to testify. Thus, whether or not he does testify or not is his own decision. You must disregard any comment that may have been made by counsel in argument to you concerning that matter and put that comment out of your mind."

In *Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] the opinion of the court concludes: "We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (380 U.S. at p. 615.) A final footnote recites: "We reserve decision on whether an accused can require, as in *Bruno* v. *United States,* 308 U.S. 287 [60 S.Ct. 198, 84 L.Ed. 257], that the jury be instructed that his silence must be disregarded." (*Id.*) The comment which is condemned is that which is directed to the failure of the defendant to personally explain factual matters established by independent evidence, and which requests the jury to draw an unfavorable inference against him. (See *Griffin* v. *California, supra,* 380 U.S. 609-611 and cf. *People* v. *Modesto* (1965) 62 Cal.2d 436, 447-454 [42 Cal.Rptr. 417, 398 P.2d 753]; *People* v. *Cotter* (1965) 63 Cal.2d 386, 398 [46 Cal.Rptr. 622, 405 P.2d 862]; *People* v. *Price* (1965) 63 Cal.2d 370, 375 [46 Cal.Rptr. 775, 406 P.2d 55]; *People* v. *Teale* (1965) 63 Cal.2d 178, 196-197 [45 Cal.Rptr. 729, 404 P.2d 209]; *People* v. *Roberts* (1965) 63 Cal.2d 84, 90 [45 Cal.Rptr. 155, 403 P.2d 411]; and *People* v. *Bostick* (1965) 62 Cal.2d 820, 823-827 [44 Cal. Rptr. 649, 402 P.2d 529]; *People* v. *Staten* (1965) 238 Cal. App.2d 499, 500-501 [47 Cal.Rptr. 926]; *People* v. *Collier* (1965) 237 Cal.App.2d 259, 263-264 [46 Cal.Rptr. 887].)

The reference of which complaint is made in this case did not request that an unfavorable inference be drawn from the defendant's failure to testify, but that such inference be

drawn from his failure to produce his companions as witnesses. (See Code Civ. Proc., § 2061, subds. 6 and 7; Evid. Code, §§ 412, 413.) The reference to the defendant's constitutional right was to distinguish his failure to testify, from which no inference could be drawn, and the failure to summon his companions to appear and explain his activities and state of sobriety from which the inference was requested.

Even if the statement could be deemed a prohibited comment, the following comment is applicable: "Defendant also asserts that the court erred in (1) allowing the prosecutor to comment in argument upon his failure to testify during the guilt and sanity phases of the trial, and (2) giving an instruction on this subject on the guilt trial substantially of the type held to constitute error in *Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]. It is to be noted, however, that, here, the erroneous instruction was requested by both the defense and the prosecution. No objection was made to the challenged comments. The comments were temperate and, although both the instruction and comment were error, under the circumstances they furnish no ground for disturbing the judgment when the *People* v. *Watson* test previously alluded to is applied. (*People* v. *Bostick*, 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529].)'' (*People* v. *Cotter, supra*, 63 Cal.2d 386, 398-399; and see *People* v. *Fontaine* (1965) 237 Cal.App.2d 320, 333-334 [46 Cal.Rptr. 855].)

Consideration has been given to the propriety of the comment on defendant's failure to produce witnesses. It has been said that an instruction on this subject should not be given in a criminal action. "Appellant next contends that the court erred in instructing the jury that the prosecution was not required to call all persons shown to be present or to have knowledge of matters on trial. He contends also that the trial court erred in failing to instruct the jury pursuant to section 2061, subdivisions 6 and 7, Code of Civil Procedure, that evidence is to be estimated not only by its intrinsic weight but also according to the evidence which it is in the power of one side to produce and of the other to contradict and, therefore, that if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust. As to the first of these two assignments the instruction given has been approved as a proper one to be given in criminal cases. (*People* v. *Reingold*, 87 Cal.App.2d 382, 408 [197 P.2d 175].) As to the second assignment it has been held that such an instruction may be given by the court

to the jury on all proper occasions, but that in criminal cases the proper occasions are so few and the improper occasions are so many that it would be better if the instruction were given rarely, if at all. (*People* v. *Cuff,* 122 Cal. 589 [55 P. 407]; *People* v. *Trinidad,* 198 Cal. 728 [247 P. 907]; *People* v. *Carroll,* 20 Cal.App. 41 [128 P. 4].) This case illustrates how the instruction can be a two-edged sword, for appellant himself did not take the stand, although he certainly must have had knowledge of matters in issue. Had the court given the instruction, the probability is that the industry and learning of his appointed attorney on appeal would have brought up an argument that the giving of the instruction was error and cause for reversal since it pointed so clearly to the failure of appellant to take the stand. (See *People* v. *Cuff, supra; People* v. *Trinidad, supra; People* v. *Carroll, supra.*)'' (*People* v. *Adame* (1959) 169 Cal.App.2d 587, 599-600 [337 P.2d 477]; and cf. *People* v. *Fontaine, supra,* 237 Cal.App.2d 320, 332-333.) No instructions on the subject were given at the trial. (See CALJIC No. 23 and BAJI No. 30-A (revised).) Despite the reservations expressed above, no error or misconduct appears in the remarks of the prosecutor under the facts present in this case.

*Arraignment for judgment*:

The only record presented of the proceedings at which judgment was pronounced is that contained in the clerk's transcript which recites that the defendant was present with his counsel; that the matter of defendant's probation was presented, submitted and considered by the court which made its order denying probation; and then: ''defendant is duly arraigned for Judgment.''

Section 1200 of the Penal Code specifies that the defendant ''must be asked whether he has any legal cause to show why judgment should not be pronounced against him.'' Defendant's contention that he was not properly arraigned for judgment cannot be sustained on this record. ''It does not appear from the record whether he was asked if he had legal cause to show why judgment should not have been pronounced at the time he was sentenced. The transcript merely indicates that defendant was adjudged guilty and sentence pronounced. ▮ It must be presumed, in the absence of a showing to the contrary, that the statutory requirements with respect to the arraignment for judgment and sentencing were regularly performed. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Citrino, supra,* 46 Cal.2d 284, 287 [294 P.2d 32] [2]; *In re Smith,*

*supra,* 33 Cal.2d 797, 801 [205 P.2d 662] [2].) No showing to the contrary was made in the present case." (*People* v. *Downer* (1962) 57 Cal.2d 800, 816-817 [22 Cal.Rptr. 347, 372 P.2d 107].)

Even if it be assumed that the court omitted this interrogation there is no reversible error.

■ Where a defendant is without counsel failure to ask this question may be prejudicial error. (*People* v. *Skinner* (1966) 241 Cal.App.2d 752, 756-758 [50 Cal.Rptr. 867].)
■ On the other hand where the defendant is, as herein, represented by counsel the case will not be reversed in the absence of a showing of some prejudice. This case is governed by the following: "Insofar as the question of the alleged failure of the court to ask defendant if he had any reason why judgment should not be pronounced, we stated, as above seen, on the automatic appeal (*People* v. *Thomas, supra,* 37 Cal.2d 74, 76 [230 P.2d 351]) that when defendant was asked the question he stood mute. Although it does not appear in the reporter's transcript whether the question was asked it was recited by the court in its judgment that it was. In any event, while the requirement (Pen. Code, §§ 1200, 1201) that the question be asked is substantial and a failure to ask it is fatal to the judgment if defendant has been deprived of counsel (*In re Levi,* 39 Cal.2d 41 [244 P.2d 403]) it is not fatal where defendant is present and represented by counsel and no prejudice appears (*People* v. *Henry,* 86 Cal.App.2d 785 [195 P.2d 478]; *People* v. *Hawthorne,* 63 Cal.App.2d 262 [146 P.2d 517]; *People* v. *Swift,* 140 Cal.App. 7 [34 P.2d 1041]; *People* v. *Wademan,* 38 Cal.App. 116 [175 P. 791]). ■ In the absence of any showing to the contrary we must assume that the recital in the judgment is correct. (*People* v. *Wademan, supra,* 38 Cal.App. 116, 137.) Defendant's counsel was fully advised of all circumstances bearing upon the degree of the crime and punishment to be imposed and had an opportunity to present them at the hearing. Both defendant and his counsel were present when judgment was pronounced and no objection was made." (*People* v. *Thomas* (1955) 45 Cal.2d 433, 438-439 [290 P.2d 491]; and see *People* v. *Straw* (1962) 209 Cal. App.2d 565, 567-568 [26 Cal.Rptr. 461].)

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 26, 1966.