THE STATE OF KANSAS v. WILLIAM RAMBO.

No. 13,890.   (77 Pac. 563.)

SYLLABUS BY THE COURT.

1. CRIMINAL PROCEDURE—*Misconduct of Jury — Verdict Vitiated.*
A defendant on trial for murder did not testify in his own behalf.
After conviction one of the jurors was sworn in support of a mo-
tion for a new trial and stated that while deliberating on the
verdict he mentioned in the hearing of the other jurors that de-
fendant did not testify, and said in the jury-room: "If anybody
put anything like that [meaning a charge of murder] over my
shoulders I would talk for myself," and explained that he meant
"if anybody blamed anything on me that I was not guilty of, I
would think my own talk [meaning testimony] would do me
more good than anybody else's." *Held*, that the statements of
the juror show a consideration by him of the circumstance that
the defendant did not testify as prejudicial to the latter, which viti-
ates the verdict.

2. —————— *Testimony of Juror on Motion for New Trial Weighed.*
After confessing the misconduct shown in the above paragraph,
the juror testified that the failure of defendant to take the witness-

| | |
|---|---|
| 69 | 777 |
| 69 | 876 |
| 69 | 777 |
| 70 | 883 |
| 69 | 777 |
| d74 | 177 |
| 69 | 777 |
| d77 | 526 |

stand in his own behalf was not considered by him in arriving at a verdict. *Held*, that such general denial did not overcome the obvious fact, apparent from the juror's testimony, that the refusal of the person on trial to testify was considered by him to the prejudice of the defendant.

3. ———— *Failure of Defendant to Testify—Evidence of its Discussion by Jury Admissible.* Section 215 of the code of criminal procedure (Gen. Stat. 1901, § 5657) provides that the neglect or refusal of a person on trial to testify shall not raise a presumption of guilt, nor shall the same be considered by the court or jury. *Held*, that the testimony of a juror on the hearing of a motion for a new trial, reciting comments made by him in the jury-room on the failure of the person on trial to testify, is, in effect, the same as a narrative by him of extraneous facts not in evidence, and not proper to be considered, and is admissible to impeach the verdict. (*Gottleib Bros. v. Jasper & Co.*, 27 Kan. 770.)

Appeal from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed July 7, 1904. Reversed.

*James S. Gibson*, county attorney, and *B. S. Smith*, deputy county attorney, for The State.

*Angevine & Cubbison*, and *I. F. Madlam*, for appellant.

The opinion of the court was delivered by

SMITH, J.: The appellant, William Rambo, was found guilty of murder in the second degree. On the hearing of the motion for a new trial the affidavit of L. G. Eike, one of the jurors, was filed by defendant in support of his application. The material part reads:

"When the jury retired to consult and deliberate upon their verdict, the fact that William Rambo, commonly known as 'Toots' Rambo, defendant, did not go upon the stand to testify in his own behalf was freely commented upon and discussed in the jury-room, and the jurors, while so deliberating, expressed

their opinion that the fact that said Rambo did not testify in his own behalf was an indication and some proof that said Rambo was guilty. Several of us talked about this matter. I mentioned it first, and Mr. Hill mentioned '(it) and so did Mr. Price. I think every juror said something about it.''

The juror was also sworn and testified orally in support of the motion as follows :

''Ques. Now, the fact that he did not go upon the stand and testify—that fact was mentioned, was it? Ans. Yes, sir.

''Q. How often do you think that fact was mentioned—that he did not go upon the stand? A. I think that was only mentioned once.

''Q. Do you remember the words used at that time? A. No, I do not remember.

''Q. Do you remember who mentioned the fact that he did not go on the stand and testify? A. I think I did.

''Q. What did you say? A. I said if anybody put anything like that over my shoulders I would talk for myself.

''Q. You meant—what did you mean by that? A. I meant by that if anybody blamed anything on me that I was not guilty of, I would think my own talk would do me more good than anybody else's.

''Q. You meant your own testimony as a witness? A. Yes, sir.

''Q. Do you remember anything else that you said at that time? A. That is all I said.''

''Q. When you went out Thursday night there were some members of the jury voted 'not guilty,' were there not? A. Yes, sir.

''Q. And there were members of the jury that voted 'not guilty' all day Friday? A. Yes, sir.

''Q. And there were members of the jury that voted 'not guilty' on Saturday morning? A. Yes, sir.''

"Q. You were voting for conviction at the time you made that statement to the jury? A. Yes, sir.

"Q. And up to that time some had been voting for acquittal? A. Yes, sir."

This juror and eleven others who sat in the case testified that the defendant's failure to take the stand as a witness in his own behalf was not considered by them, and did not influence them in arriving at a verdict. Section 215 of the code of criminal procedure (Gen. Stat. 1901, § 5657) provides:

"No person shall be rendered incompetent to testify in criminal causes by reason of his being the person . . . on trial or examination; . . . provided, that the neglect or refusal of the person on trial to testify . . . shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the case, nor shall the same be considered by the court or jury before whom the trial takes place."

This section of the statute is peremptory in its declaration that the refusal of a defendant on trial charged with crime to testify shall not be considered by the jury. We may give credence to the statements of the jurors, other than Eike, who testified that they did not give consideration to the failure of Rambo to be a witness in his own behalf. The assertions of Eike, however, to that effect must be taken in connection with his confessed misconduct in the jury-room, and his words spoken there must serve as a true index to the operations of his mind. A stultifying denial that he did not consider the refusal of appellant to testify will not overcome the force of the application which he made of Rambo's failure to take the witness-stand to a supposed case of his own when he said he meant "if anybody blamed anything on me that I was not guilty of, I would think my own

The State v. Rambo.

talk [meaning testimony] would do me more good than anybody else's." This and the accompanying statements of the juror, set out above, must convince the meanest understanding that he did consider the refusal of defendant to testify as a circumstance weighing against him while the question of his guilt or innocence was under deliberation in the jury-room. From the language employed by the juror prejudice to the defendant is evident.

Obvious language, expressive of opinion, indicating thought on a matter respecting which the words are used, is the best evidence that the person speaking has, to a greater or less degree, considered the subject to which the language relates. "Out of the abundance of the heart the mouth speaketh." A mere incidental mention, however, of the fact by a juror that a person on trial did not testify in his own behalf—a remark noting the circumstance, unaccompanied by an opinion that an explanation would be of service to the accused—might fall short of showing a consideration of the matter by the speaker, and not violate the statutory injunction. ( *The State v. Mosley*, 31 Kan. 355, 2. Pac. 782 ; *The State v. Goff*, 62 id. 104, 61 Pac. 683.)

The court instructed the jury that defendant's failure to teftify was not to be construed by them as in any manner affecting his guilt or innocence. This admonition was not heeded. The juror himself not only considered the neglect of defendant to testify, but his opinion deduced from that fact was expressed in the hearing of others, with an evident intent to have his fellow jurors consider what he said.

In Texas a section of the statute reads :

"Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the

failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented upon by counsel in the cause.'' (Code Crim. Proc., art. 770.)

In *Tate v. The State*, 38 Tex. Crim. Rep. 261, 265, 42 S. W. 595, a conviction for murder was reversed on the strength of an affidavit made by one of the jurors that the failure of the accused to testify was considered in the jury-room; that one of his fellow jurors asked why defendant was not put on the stand. He answered that, if he had testified, when cross-examined by the district attorney he would have been bound to convict himself by his own testimony. The court said :

''As stated above, the statute is plain in its terms, and it does not stop to estimate the question of injury ; it inhibits the failure of the defendant to testify from being used as a circumstance against him ; and this court has often reversed cases where this matter was discussed by counsel for the state before the jury.''

To the same effect, see *Wilson, alias Garner, v. The State*, 39 Tex. Crim. Rep. 365, 46 S. W. 251 ; *Thorpe v. The State*, 40 id. 346, 50 S. W. 383 ; *Buessing v. The State*, 43 id. 85, 63 S. W. 318.

That part of section 215, *supra*, which prohibits any attorney prosecuting in a criminal case from referring to the circumstance that the person on trial did not testify, has been considered and passed on several times by this court. (*The State v. Mosley*, supra ; *The State v. Tennison*, 42 Kan. 330, 22 Pac. 429.)

*The State v. Balch*, 31 Kan. 465, 469, 2 Pac. 609, was a prosecution for criminal libel. The accused did not testify. The county attorney, in his opening argument to the jury, stated that '' the defendant Balch had not offered any testimony denying that he signed

and circulated the libel; that he had failed to go on
the witness-stand  .  .  .  and deny that he had not
signed or circulated that libel." The court, in re-
versing the judgment of conviction, said :

"It must be remembered that this statement of the
county attorney was not provoked or called forth by
anything said by the defendant or his counsel; nor
was it said incidentally in some argument addressed
to the court; but it was said in an argument addressed
to the jury, and in an argument upon the merits of the
case, and for the purpose of influencing the jury and
obtaining from them a verdict that the defendant was
guilty of the offense charged.   In all probability, this
statement was made innocently and inadvertently by
the county attorney, as he had been acting in that
capacity only a very short time, and this was among
the first cases prosecuted by him.   But still, the
rights of the defendant cannot be ignored or over-
looked for that reason; nor can the principle be toler-
ated that convictions for violated law may be procured
or brought about by the inauguration and accomplish-
ment of other violations of law.   It is also true that
in this case the court below instructed the jury that
the statement made by the county attorney should not
be allowed to work any prejudice to the rights or in-
terests of the defendant.   But, under the authorities,
the evil done by such an infringement of the law — an
infringement of law by the prosecuting officer of the
state — cannot be remedied or cured by any mere in-
struction from the court.   The only complete remedy,
if the defendant is convicted, is to grant him a new
trial, on his motion." (See, also, *State v. Baldoser*, 88
Iowa, 55, 55 N. W. 97.)

The testimony of the juror Eike on the motion for
a new trial was a narrative by him of extraneous facts
not in evidence and not proper to be considered.   The
court did not err in receiving it. (*Gottlieb Bros. v. Jas-
per & Co.*, 27 Kan. 770 ; *A. T. & S. F. Rld. Co. v. Bayes*,

42 id. 609, 22 Pac. 741 ; *The State v. Burton*, 65 id. 704, 70 Pac. 640.)

Other questions in the case are discussed by counsel, but the references in the briefs to the record do not correspond with the pages of the bill of exceptions before us, and for this reason we have not considered them.

The judgment of the court below will be reversed, and a new·trial granted.

All the Justices concurring.