No. 46,479

STATE OF KANSAS, *Appellee,* v. RAY RINCONES, *Appellant.*

(495 P. 2d 1019)

Opinion filed
April 8, 1972.

*Lelyn J. Braun,* of Garden City, argued the cause and was on the brief for the appellant.

*Harrison Smith,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Ray Rincones was found guilty by a jury of the offense of arson (K. S. A. 1971 Supp. 21-3718), was sentenced and now appeals.

The subject of the alleged arson was a building in Garden City known as Taco John's. The fire occurred during the early morning hours of September 13, 1970.

Appellant first contends the verdict of guilt was contrary to the evidence and was based only on speculation without sufficient eyewitness identification of him as the arsonist. The point is not well taken.

Evidence for the prosecution revealed the following events. Saturday night, September 12, 1970, was the last night of the Mexican Fiesta in Garden City. The following morning the business known as Taco John's closed at its usual hour of 1:00 a. m. At about 1:30, while the manager and other employees were still present cleaning up, a group of Mexican-American youths knocked on the front door seeking admittance to be served. When told they could not enter they used profanity and pounded on the door. One of them "looked like" appellant. The group departed in a dark car. The employees of Taco John's extinguished all fires and heating appliances and left about 1:45 a. m. There were no oil or gas cans lying in or about the premises.

That same morning at some time estimated to be about 1 o'clock appellant drove a black Chevrolet automobile into a Derby filling station about two blocks west of Taco John's. The vehicle had a visibly damaged left rear fender. An employee was on duty at the station. Appellant was in an intoxicated condition, being described as "pretty well loaded". He asked for a gasoline can. The station attendant placed a large green one in the back seat of appellant's car. Appellant left but returned in his car a few minutes later. He came from the east. He was angry because no gasoline had been put in the can. He stated he needed just a little gas as his car was stalled at Taco John's. The attendent filled a quart Pennzoil oil can with gasoline and gave it to appellant who again departed. A few minutes later the station attendant heard that Taco John's was on fire. The station attendant had not previously known appellant but on the night in question a John Moreno was present at the station and assisted in pushing appellant's automobile to get it started the first time appellant was at the station; the attendant heard Moreno address appellant by name.

About 2:24 a. m. the fire at Taco John's was discovered by a police officer. There was a hole in a glass door located at the southwest part of the building. Near the west side of the building

there was a green can identified as that given earlier to appellant by the station attendant. A quart oil can similar to that given appellant by the attendant was found inside the door. The can smelled of an inflammable fluid. The fire occurred just inside the door. There was no wiring or other source of ignition in that area and investigating officers concluded the fire was of incendiary origin. Later that same night the Chevrolet automobile driven by appellant was discovered stalled on a railroad right-of-way on a pile of railroad ties. Appellant had previously borrowed the vehicle from another person with a view of buying it. When asked by officers about the vehicle on October 6th appellant stated he had left it at the Fiesta ground; he was "pretty drunk" and later went back to get the car, wrecking it on the way home. He denied having been at Taco John's.

Appellant testified in his own behalf. He attended the dance, and drank whiskey and tequilla the night in question, stating: "I drink until I don't remember". He remembered being at the Zarape Cafe, then the next thing he remembered was waking up at home. His fiance said some friends brought them home. He knew nothing about the burning of Taco John's.

Material facts in a criminal case may be established by circumstantial evidence so long as that evidence satisfies the applicable requirements of consistency with guilt and inconsistency with innocence and possesses the requisite degree of probative force (*State v. Wall,* 206 Kan. 760, 482 P. 2d 41). On appeal, when considering the sufficiency of circumstantial evidence to sustain a conviction of crime, the question is not whether the evidence is incompatible with any reasonable hypothesis except guilt, as that question was for the jury and the trial court. The appellate court's function is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt (Hatcher's Kansas Digest [Perm. Supp.], Criminal Law, § 285; 4 West's Kansas Digest, Criminal Law, § 1159[6]).

The evidence here satisfies that test. Appellant was identified by the station attendant as the recipient of the two incriminating gas cans—the other evidence need not be iterated. All of it, once accepted by the fact finder, sufficiently convicts appellant.

Following the jury verdict appellant's motion for new trial was overruled and on January 14, 1971, he was sentenced to the custody of the state director of penal institutions, and thereupon committed to the state penitentiary.

On March 12, 1971, appellant filed a second motion for new trial—this time on the ground of newly discovered evidence. Attached to the motion was a brief letter written by a Junior Oscar Burns, an inmate in the state penitentiary. In the letter Burns stated he had committed the crime for which appellant had been convicted and that he would be willing to so testify.

Events thereafter are revealed by the language of the trial judge in his ruling denying the motion for new trial, as follows:

". . . on March 5th, 1971, after the defendant had been incarcerated in the penitentiary at Lansing, Kansas, a convict in the penitentiary, one Junior Oscar Burns, who was in the penitentiary serving a long sentence and who was acquainted with the defendant, Ray Rincones, wrote a letter to Mr. Lelyn J. Braun, which letter is in the file and in which he states that he was the one that committed the crime for which Ray Rincones was convicted. That thereafter, in accordance with said letter, Mr. Braun filed a motion for new trial, which is the motion to be heard here today. The Court further finds that subsequent to the filing of the motion for new trial the County Attorney of Finney County, Kansas, and Mr. Richard G. Rohleder, the Asssitant Chief of Police of the City of Garden City, Kansas, went to the penitentiary at Lansing and there took a court reporter statement under oath from the witness, Junior Oscar Burns, which statement was taken upon April 14th, 1971, and which has been filed herein.

"The Court, having examined the transcript of the trial and also the transcript of the sworn testimony of Junior Oscar Burns, finds that there are so many inconsistencies and discrepancies between the story as told by Burns and the facts as they appear from the transcript that it is obvious that the statement of Burns is complete fabrication made for the sole purpose of attempting to free a fellow convict and has no evidentiary value. Under the circumstances the Court does not feel that the presence of the defendant, Ray Rincones, or the presence of Junior Oscar Burns is required at this hearing and the Court refuses to bring them back from the penitentiary for further hearing herein.

"Thereupon argument is had by counsel in which counsel for the defendant maintains that while there are some inconsistencies in the statements that they are not such as to prevent the statement of Junior Oscar Burns from being valid, and insists upon a motion for new trial being granted.

"The Court, being duly advised in the premises and having carefully studied the transcript of the trial and the transcript of Junior Oscar Burns' testimony, finds that the testimony of Junior Oscar Burns is totally inconsistent with the actual facts, is a mere fabrication and clearly shows Junior Oscar Burns has no actual knowledge of the crime or the details of the same and that his testimony is totally false."

Appellant asserts error in the refusal to order a new trial by reason of Burns' confession. The complaint has no merit.

In *State v. Campbell*, 207 Kan. 152, 483 P. 2d 495, this court stated:

"A new trial should not be granted on the ground of newly discovered evidence unless the district court is satisfied the evidence would probably produce a different verdict, and the credibility of the evidence offered in support of the motion is for the district court's consideration. Our appellate review of the order denying a new trial is limited to whether the district court abused its discretion." (p. 154.)

Certainly newly discovered evidence in the form of a confession by another that he committed the alleged crime can be a ground for granting a new trial; however, a motion of this type is not regarded with favor and should be granted only with great caution (see *Casias v. United States*, 350 F. 2d 317).

Our review of the entire record, including the Burns' statement, compels us to agree with the trial court's conclusion that the so-called confession was gravely lacking in credibility. It contained not only contradictions and inconsistencies with undisputed physical facts disclosed at trial but inherent improbabilities as well. Much of the dovetailing in with the prosecution's evidence which the confession did embody had patently unconvincing aspects.

The matter need not be labored. The trial court did not abuse sound discretion in refusing to grant a new trial.

Judgment affirmed.

APPROVED BY THE COURT.