No. 47,210

STATE OF KANSAS, *Appellee*, v. CHARLES L. NADING, *Appellant*.

(519 P. 2d 714)

Opinion filed March 2, 1974.

*John W. White*, of Smith and White, Chartered, of Humboldt, argued the cause and was on the brief for the appellant.

*James M. Immel*, county attorney, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Charles L. Nading was convicted by a jury of the offense of attempted aggravated burglary. His motion for new trial was denied, he was sentenced and now appeals.

Prosecution testimony revealed the following. Mrs. Mary Hansen was asleep in her residence at 423 North State street in Iola during the early morning hours of April 8, 1972. Present in her house with her were her children and a girl. At about 4:00 a. m. Mrs. Hansen awoke, sensing something was wrong. She got up and checked on the girl and her children. When she returned to her bedroom two men were standing close together right outside her bedroom window. There was a street light in the area located on the west side of the Hansen house. Mrs. Hansen went to the kitchen, got a drink of water and returned to her bedroom where she could see the men right outside her bedroom window again. She was frightened but she waited a short while to ascertain whether the men were just passing through her yard. She then went to the kitchen, called the police and returned to her bedroom where she could see the two men "rounding the front porch again as though they had circled

the house." About five minutes elapsed from the time Mrs. Hansen first saw the two men until police arrived.

Two Iola city patrolmen responded to the police radio dispatcher's call, arriving near the Hansen house in an unlighted police car. These officers noticed two men near a window of the Hansen home. One officer, who had alighted and gone on foot around the house from the other direction, testified both men had their hands around the window frame and it looked as though they were attempting to remove the storm window from the house. This officer saw the two men go to the rear entrance to the house where one of them opened the screen door and the other tried to open the inside door by turning the knob. At this point the officer remaining in the police vehicle turned on the patrol car lights and the two men started to run. They ran close to Mrs. Hansen's automobile which was parked in a driveway and as they did so one officer observed them throwing some objects under the Hansen car. The men were immediately apprehended by the two officers. One was appellant Charles L. Nading, the other was Clinton J. Myers. The two stated they had hitchhiked to Iola and that they were just "prowling" around. When arrested appellant was wearing a camouflaged colored hat, brown coveralls, cowboy boots and jersey gloves. It was a warm night— temperature was about sixty-five to sixty-seven degrees. The arresting officer was wearing a short sleeved shirt and didn't need gloves to keep his hands warm.

The officers took the pair immediately to the police station and booked them for the offense of prowling. The officers then returned to the Hansen home and looked under the Hansen vehicle. There they found a five pound sledgehammer, two long drift punches and a .32 caliber automatic pistol containing a clip loaded with cartridges. Laboratory analysis of these items revealed no fingerprints. The punches were of a type which could be used to knock the dial off a safe. When Mrs. Hansen had parked her vehicle about ten o'clock the night before there was nothing in the driveway under it.

Appellant testified in his own behalf: He had been drinking in taverns in Parsons the afternoon and evening of April 7, 1972; sometime after midnight he, his codefendant Myers and a Henry Burik left Parsons in Burik's automobile, intending to drive to Leavenworth where Myers knew some people; prior to leaving Parsons they had purchased two pints of bootleg whiskey; while in Burik's car Myers and Burik had two arguments about the manner in which

Burik drove the car; the first occurred on a county road south of Iola, the second about a mile north of the Iola truck stop on the main highway; there appellant and Myers got out of the Burik vehicle and walked back to Iola; they were intending to walk back to Altamont; they stopped in Iola to rest on the front porch of the Hansen house; they then walked around the house to the rear to try to find a hydrant because they were thirsty; there police told them to stop and arrested them; appellant did not run because he was too drunk to run; he did not have the sledgehammer, punches or pistol in his possession and he did not see Myers have them; he did not look into the window of the Hansen house and had no intention of taking anything from it; he was first notified he was charged with attempted burglary when a warrant was given to him late Saturday evening, April 8, 1972, while he was in jail.

Henry Burik testified in appellant's behalf, generally corroborating appellant's testimony as to events occurring in Parsons and the journey to the point one or two miles north of Iola where appellant and Myers were left afoot; at this time both were drunk; after proceeding to the first town north Burik returned to Iola where he drove around but did not see his erstwhile passengers.

Appellant was charged jointly with Myers but was granted a severance and tried separately.

Appellant's first point on appeal is that the trial court erred in denying his motion to dismiss because, subsequent to his arrest, he was not taken before the nearest available magistrate without unnecessary delay, nor was a complaint filed against him forthwith, as provided by K. S. A. 1973 Supp. 22-2901.

First of all, appellant asserts he was arrested during the early morning hours of Friday, April 7, 1972. Counsel for appellee does not take issue with this assertion and in fact concedes it; nonetheless, the record conclusively reveals the offense was committed and appellant was arrested during the early morning hours of Saturday, April 8th. The confusion appears to have developed in this fashion —at a hearing on a motion to dismiss, held June 9, 1972, more than three months prior to trial, counsel for appellant stated that appellant was arrested on April 7, 1972, and he recited the dates of further events; the then county attorney replied: "I believe that is correct"; a transcript of this hearing was embodied in a supplemental record on appeal and present counsel appear to have accepted the April 7th date mentioned therein.

The record on appeal reveals that the complaint, prepared April 8, 1972, and the information each charged the offense as having occurred on April 8, 1972; every witness whose testimony appears in the record on appeal (Mrs. Hansen, the two arresting patrolmen, appellant and Henry Burik) clearly and specifically fixed the offense and arrest as having occurred during the early morning hours of Saturday, April 8th.

Further events, concerning which no confusion appears, are: On Saturday afternoon, April 8th, a complaint was filed and after the judge of the county court had received evidence from police officers a warrant charging appellant with attempted aggravated burglary was issued; the warrant recited the sum of $2,500 as the amount of appearance bond required; the warrant was exhibited to appellant the evening of Saturday, April 8th, while he was in jail; appellant was taken before the judge of the county court at about 1:30 p. m. on Monday, April 10, 1972.

K. S. A. 1973 Supp. 22-2901 provides in part:

"*Appearance before the magistrate.* (1) When an arrest is made in the county where the crime charged is alleged to have been committed, the person arrested shall be taken without unnecessary delay before a magistrate of the court from which the warrant was issued. If the arrest has been made on probable cause, without a warrant, he shall be taken without unnecessary delay before the nearest available magistrate and a complaint shall be filed forthwith."

It has been said the purpose of the foregoing is to insure that any person arrested is held on a proper charge and to secure to such person the earliest possible opportunity for bail (12 Vernon's K. S. A. Code of Criminal Procedure, § 22-2901, p. 502.) The phrase "without unnecessary delay" is taken from Rule 5, Federal Rules of Criminal Procedure, and is intended to provide a measure of flexibility, dependent upon the circumstances of the arrest, but at the same time to require a high degree of promptness ("Notes On The Code of Criminal Procedure," Richard H. Seaton and Paul E. Wilson, 39 JBAK 97, 1964). Federal cases indicate one of the purposes of the rule is to prevent prearraignment detention of an arrested person for the purpose of securing a confession (*United States v. Chadwick*, 415 F. 2d 167). In determining what constitutes unnecessary delay under Rule 5, federal courts make a case by case determination. In *Walton v. United States*, 334 F. 2d 343, this was stated:

"There is no hard and fast rule as to what constitutes unnecessary delay. Each case must be determined on its own facts." (p. 346.)

Our prior criminal code contained no specific provision that a person arrested without a warrant should be taken before a magistrate without unnecessary delay. However, this court in construing statutes relating to appearances before magistrates (K. S. A. 62-610, 62-614) held that a person arrested for a crime, either with or without a warrant, was to be taken before a magistrate with reasonable promptness and without unnecessary delay (*Cooper v. State*, 169 Kan. 421, 411 P. 2d 652). In *State v. Dobney*, 199 Kan. 499, 429 P. 2d 928, the following appears:

"Defendant's next contention that he was prejudiced because of the delay in his being taken before an examining magistrate is likewise without merit. The record fails to disclose the date of arrest, but we are told that it was on Saturday, March 26, 1966. Charges were filed on Tuesday, March 29, and on the same day the defendant was taken before the magistrate. The reason for the delay is not apparent, except that the arrest occurred on the weekend. In what way defendant was prejudiced by the delay is not shown. Even if the time interval be considered excessive, unless the delay in some way deprived the defendant of a fair trial, it did not in and of itself constitute a denial of due process." (p. 451.)

Certainly the provision that an arrested person be taken without unnecessary delay before a magistrate does not require around-the-clock services and availability of a magistrate. Many federal cases have held it was not unnecessary delay to wait until regular business hours of the magistrate before producing the prisoner (see 1 Wright, Federal Practice and Procedure, § 74, p. 98).

Here the complaint was filed, examination of police officers made and warrant issued at some undesignated hour of the afternoon of the same day on which the offense was committed, Saturday, April 8, 1972. The warrant was served on appellant "late Saturday evening." The amount of his bond was endorsed on the warrant but he was not taken before the magistrate until 1:30 o'clock on the afternoon of Monday, April 10th. There is no indication that any incriminating statements or admissions were obtained meanwhile from appellant or that anything improper occurred over the weekend. Appellant makes no assertion or showing that he was prejudiced by the delay, nor does it appear the prejudice resulted in any way. There was sufficient compliance with 22-2901 and the trial court properly denied appellant's motion to dismiss.

Appellant contends the trial court erred in receiving, over his objection, evidence of two previous convictions of crime. These convictions were evidenced by two journal entries of judgment. Appellant's identity as the subject of these convictions was conceded.

One journal entry reveals he was convicted October 20, 1964, of the offenses of burglary in the second degree and larceny in connection therewith, in the district court of Cowley county, Kansas; the second shows he was convicted May 12, 1965, of the offense of burglary in the second degree in the district court of Butler county, Kansas. The contention is that the convictions were too remote in time and were not relevant evidence.

Convictions occurring eight and seven years previous to the offense upon trial are not too remote in time, where otherwise relevant (*State v. Finley*, 208 Kan. 49, 490 P. 2d 630).

K. S. A. 60-455 provides:

"*Other crimes or civil wrongs.* Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The two convictions were offered by the prosecution for the purpose of showing intent, plan, and absence of mistake or accident. They were received for those limited purposes and the jury was instructed accordingly. No complaint against the instructions has been lodged.

The crucial issue in the case is the intent of the appellant in his actions at the time he was at the Hansen house. Appellant asserted he was there for innocent and honest purposes—to rest and quench his thirst. The state contended otherwise. When previous convictions are offered in evidence the trial court is always confronted with the delicate task, first, of determining relevancy and, where that issue is resolved favorably to the prosecution, then determining whether the evidence should be excluded because its probative value may be substantially outweighed by its prejudicial effect, confusion of the issues or misleading of the jury (see *State v. Davis*, 213 Kan. 54, 515 P. 2d 802). The phrases "absence of mistake or accident" as used in 60-455 are, of course, generally factors bearing on intent. Where an act in itself may be susceptible of two interpretations, one innocent and the other criminal, then the intent with which the act is done becomes the critical element in determining its character.

The previous convictions here were of a similar nature to the offense charged, sufficiently so, we think, that they could properly be taken into consideration as casting light upon the issue of the intent with which appellant's acts at the Hansen residence were done. We think the probative worth of this evidence sufficiently outweighed any possible prejudicial effect so as to render it admissible within the trial court's discretion. Consequently it must be held the court did not err in this respect.

Appellant asserts the trial court erroneously admitted into evidence over his objection the articles found by the arresting officers in the driveway under the parked Hansen automobile, namely, the sledgehammer, the two punches and the loaded pistol. Mrs. Hansen testified that when she returned home shortly before 10:00 p. m. Friday night there was nothing in the driveway where she parked her car. One of the arresting officers testified that when the two men fled it appeared they were throwing some kind of objects under the car. The tools found there shortly after the arrest are of a type used to facilitate wrongful entry into a locked building while the pistol is an item notoriously used by persons engaged in clandestine activities for protection and to aid in escape if discovered.

In *State v. Montgomery*, 175 Kan. 176, 261 P. 2d 1009, this court stated:

"The books are full of cases holding that where an accused is identified as having been at or near the scene of a crime about the time of its commission evidence showing that he owned, possessed or had access to any articles with which the crime was or might have been committed is competent." (p. 180.)

The location of the items when found and their nature, coupled with all the testimony, would have raised an inference that appellant and his codefendant were attempting to break into the house rather than just seeking a water hydrant. The exhibits were relevant on the issue of intent and the trial court did not err in admitting them (see *State v. Jerrel*, 200 Kan. 415, 436 P. 2d 973; *State v. Gauger*, 200 Kan. 563, 564-565, 438 P. 2d 463).

Finally, appellant contends the evidence was insufficient to support the verdict of guilt. The contention has no merit. Admittedly the evidence was circumstantial and the jury was instructed on this aspect of the case. On appeal when considering the sufficiency of circumstantial evidence to sustain a conviction of crime, the question is not whether the evidence is incompatible with any

reasonable hypothesis except guilt, as that question was for the jury and the trial court. The appellate court's function is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt (*State v. Rincones,* 209 Kan. 176, 495 P. 2d 1019). The evidence here satisfies that test. Further discussion is not warranted.

The judgment is affirmed.

APPROVED BY THE COURT.