No. 47,398

STATE OF KANSAS, *Appellee,* v. CLINTON J. MYERS, *Appellant.*

(527 P. 2d 1053)

Opinion filed November 2, 1974.

*Robert V. Talkington,* of Conderman and Talkington, of Iola, argued the cause and was on the brief for the appellant.

*James M. Immel,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Clinton J. Myers was convicted by a jury of the offense of attempted aggravated burglary. New trial was denied, Myers was sentenced under the habitual criminal act (K. S. A. 1973 Supp. 21-4504) and now appeals.

Myers was charged jointly with one Charles L. Nading in the commission of the offense in question. Severance was granted and each was tried separately. We recently affirmed Nading's conviction (*State v. Nading,* 214 Kan. 249, 519 P. 2d 714).

The prosecution's evidence in the case at bar was essentially the same as that in *Nading.* We can do no better than repeat our summarization there:

". . . Mrs. Mary Hansen was asleep in her residence at 423 North State street in Iola during the early morning hours of April 8, 1972. Present in her house with her were her children and a girl. At about 4:00 a. m. Mrs. Hansen awoke, sensing something was wrong. She got up and checked on the girl and her children. When she returned to her bedroom two men were standing close together right outside her bedroom window. There was a street light in the area located on the west side of the Hansen house. Mrs. Hansen went to the

kitchen, got a drink of water and returned to her bedroom where she could see the men right outside her bedroom window again. She was frightened but she waited a short while to ascertain whether the men were just passing through her yard. She then went to the kitchen, called the police and returned to her bedroom where she could see the two men 'rounding the front porch again as though they had circled the house.' About five minutes elapsed from the time Mrs. Hansen first saw the two men until police arrived.

"Two Iola city patrolmen responded to the police radio dispatcher's call, arriving near the Hansen house in an unlighted police car. These officers noticed two men near a window of the Hansen home. One officer, who had alighted and gone on foot around the house from the other direction, testified both men had their hands around the window frame and it looked as though they were attempting to remove the storm window from the house. This officer saw the two men go to the rear entrance to the house where one of them opened the screen door and the other tried to open the inside door by turning the knob. At this point the officer remaining in the police vehicle turned on the patrol car lights and the two men started to run. They ran close to Mrs. Hansen's automobile which was parked in a driveway and as they did so one officer observed them throwing some objects under the Hansen car. The men were immediately apprehended by the two officers. One was . . . Charles L. Nading, the other was Clinton J. Myers. The two stated they had hitchhiked to Iola and that they were just 'prowling' around. When arrested [Nading] was wearing a camouflaged colored hat, brown coveralls, cowboy boots and jersey gloves. It was a warm night—temperature was about sixty-five to sixty-seven degrees. The arresting officer was wearing a short sleeved shirt and didn't need gloves to keep his hands warm.

"The officers took the pair immediately to the police station and booked them for the offense of prowling. The officers then returned to the Hansen home and looked under the Hansen vehicle. There they found a five pound sledge-hammer, two long drift punches and a .32 caliber automatic pistol containing a clip loaded with cartridges. Laboratory analysis of these items revealed no fingerprints. The punches were of a type which could be used to knock the dial off a safe. When Mrs. Hansen had parked her vehicle about ten o'clock the night before there was nothing in the driveway under it." (pp. 249-250.)

Supplementing the foregoing, the record here reveals that at the time appellant Myers was arrested he was clad in a heavy brown coat and was wearing jersey gloves, tennis shoes and blue jeans.

Appellant did not testify.

Several contentions raised here are identical to those presented in *Nading* and decided in favor of the prosecution. These are: 1. The trial court erroneously denied appellant's motion to dismiss because of delay in being taken before a magistrate. 2. The trial court erroneously received as a part of the prosecution's case in chief evidence of three previous convictions [two for second degree burglary and larceny in connection therewith and one for second degree burglary]. 3. The trial court improperly received in evidence the hammer,

punches and pistol found by the arresting officers under the vehicle parked in the Hansen driveway. 4. The evidence was insufficient to support the finding of guilt. Under authority of *Nading*, we find no merit in these specifications of error.

Appellant complains the jury disregarded the court's instruction not to consider the fact he did not testify. In support of his motion for new trial he proffered the affidavits of several jurors, the extent of which on this point was that during the jury's deliberations comment was made that appellant did not testify at trial or offer explanation of his presence on the Hansen premises. The trial court declined to consider the affidavits and denied new trial. For assertion of error appellant relies on *State v. Rambo*, 69 Kan. 777, 77 Pac. 563. There a defendant on trial for murder did not testify. After conviction a juror testified upon defendant's motion for new trial that during deliberation of the verdict he mentioned to the other jurors that defendant did not testify, and stated that if anybody put anything like that (meaning a charge of murder) upon his shoulders he would talk for himself, and further explained he meant " 'if anybody blamed anything on me that I was not guilty of, I would think my own talk [meaning testimony] would do me more good than anybody else's.' " (Syl. ¶ 1.) The juror further stated the fact the defendant did not testify was not considered by him in arriving at a verdict. This court ordered new trial, holding that such general denial did not overcome the obvious fact, apparent from the juror's testimony, that the refusal of the person on trial to testify was considered by him to defendant's prejudice.

The holding in *Rambo* has never been followed by this court. In *State v. Dreiling*, 95 Kan. 241, 147 Pac. 1108, it was questioned and in *State v. Dye*, 148 Kan. 421, 83 P. 2d 113, it was overruled *sub silentio* when we ruled:

"A juror cannot be heard to impeach his verdict by saying that in the deliberation he or any other member of the jury took into consideration the matter of the defendant having failed to testify in his own behalf when the jury was instructed not to do so." (Syl. ¶ 2.)

Meanwhile, the matter at issue has been codified. K. S. A. 60-441 provides:

"*Evidence to test a verdict or indictment.* Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

In *State v. Morgan*, 207 Kan. 581, 485 P. 2d 1371, a convicted de-
fendant sought new trial because a juror allegedly disregarded the
court's instruction with respect to his failure to testify. We held:

"Under the provisions of K. S. A. 60-441 a verdict may not be impeached
by evidence with respect to the reasoning employed by the jury in reaching
its decision or as to what may have influenced the mental processes of the
jurors in arriving at their verdict." (Syl. ¶ 3.)

The trial court properly excluded the proffered affidavits and
denied new trial upon the ground here urged. The holding in
*State v. Rambo*, supra, is expressly overruled.

In support of his request for new trial appellant also asserts the
court's instructions to the jury upon the element of intent and upon
circumstantial evidence were inconsistent, conflicting and thereby
confusing to the jury. Incorporated in the posttrial juror's affi-
davits referred to above were vague and ambiguous statements
concerning their understanding of the two instructions taken to-
gether. For several reasons the contention is not good. At trial
there was no objection to the instructions now complained of.
K. S. A. 1973 Supp. 22-3414 (3) in part provides:

"No party may assign as error the giving or failure to give an instruction
unless he objects thereto before the jury retires to consider its verdict
stating distinctly the matter to which he objects and the grounds of his objec-
tion unless the instruction is clearly erroneous."

The instructions complained of, although somewhat overbroad
in comparison with those recommended in PIK, Criminal, are not
clearly erroneous. Moreover, as in the point with respect to the
juror's comments concerning appellant's failure to testify, the
alleged misconduct, if it could be deemed to rise to that level, was
not extrinsic but related rather to the reasoning process by means
of which certain jurors arrived at and acquiesced in the verdict.
That verdict may not be so impugned and the trial court properly
excluded the affidavits and denied new trial on this ground.

Appellant next complains the trial court erroneously permitted
the prosecution, over his objection, to introduce evidence as to
whether or not he gave an explanation for his presence at the
scene of the alleged crime and further allowed comments on such
explanation by the county attorney during his final argument. The
complaints have no merit. The record on appeal does not contain
the closing argument of the county attorney or the comments
referred to. Nor does it reveal any objection to the testimony now
challenged. The prosecution says none was made. These facts

alone preclude appellate review. The argument is that a prior Miranda type warning was in order to render this testimony admissible. Such warning is not required where a statement is spontaneously made without questioning (*State v. Law*, 203 Kan. 89, 452 P. 2d 862). The statement here is not shown to have been the result of official interrogation. Moreover, the statement in question—that the two had hitchhiked into town and were just prowling around—was not incriminating in and of itself.

Finally, appellant contends he was improperly sentenced because he received only thirty minutes' advance notice that the prosecution would seek to invoke the provisions of the habitual criminal act. The same three convictions which were received in evidence as part of the state's case in chief were received at the sentence hearing. The matter of the offer of these previous convictions by the state at trial was first discussed at pretrial conference in this case in January, 1973. Appellant objected on the ground of relevancy but insisted that if these convictions were to be received in evidence at trial he should be allowed to offer evidence of probation granted in two of them. Trial occurred May 2 and 3, 1973. Appellant's identity as the subject of the three convictions was shown and he was permitted to offer the two probation orders. Sentence was imposed June 11, 1973. The sole account in the record of what transpired at that hearing is the bare recitation that appellant objected to consideration of his previous convictions on the ground he had not received five days' notice of the state's request and that allocution was afforded appellant prior to pronouncement of sentence. In its brief the prosecution states:

"Unfortunately the record on appeal does not set forth the transcript of the proceedings of June 11, 1973, but at that time the Court inquired if the defendant had anything further to present with regard to those convictions and his reply was to the effect that he knew of nothing at that time. Likewise, the defendant on that date was given the opportunity to present anything further he might have. . . ."

At oral argument counsel for appellant, who was also his trial attorney, conceded the correctness of the foregoing statements.

Appellant's contention now is he was entitled to five days' notice of the hearing of the state's motion to invoke the recidivist statute by reason of K. S. A. 60-206 (*d*), applicable to motions in civil cases. The only assertion appellant advances as to how he was prejudiced by the procedure employed is that he did not have time to consider any possible bargaining with the state at that point. Just what

appellant had to offer in this respect or how the outcome might have been affected is not revealed.

K. S. A. 1973 Supp. 21-4504 provides:

"Every person convicted a second or more time of a felony, the punishment for which is confinement in the custody of the director of penal institutions, upon motion of the prosecuting attorney, may be by the trial judge sentenced to an increased punishment as follows: . . ."

Due process of law requires that a defendant have a reasonable notice that the habitual criminal law may be invoked (*Jackson v. State*, 204 Kan. 841, 466 P. 2d 305). The state is not required to give an accused notice of its intention to invoke the habitual criminal act prior to trial or prior to submission of a case to a jury. Reasonable notice is all that is required (*State v. Pappan*, 206 Kan. 195, 477 P. 2d 989). The purpose of requiring such notice is to afford the defendant time to prepare his defense and show cause why the act should not be invoked (*State v. Bell*, 205 Kan. 380, 469 P. 2d 448). No particular form of notice is necessary and such notice may be waived (*Lieser v. State*, 199 Kan. 503, 430 P. 2d 243).

There can be no question but that appellant was the subject of the previous convictions relied upon to enhance his sentence. The validity of those convictions is unchallenged. It clearly appears appellant had the opportunity to present anything in mitigation which he desired but did not do so and he has not demonstrated prejudice in the practice employed. Although we do not commend that practice (earlier motion by the state might well have obviated the whole issue), under all the circumstances we see no reason to disturb the sentence imposed.

The judgment is affirmed.

APPROVED BY THE COURT.