STATE OF NEW JERSEY, PLANTIFF-APPELLANT, v.
HOWARD WARREN ATKINS, DEFENDANT-RESPONDENT.

Argued September 11, 1978—Decided January 18, 1979.

*Ms. Ileana N. Saros,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Ms. Susan T. Sinins,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

SCHREIBER, J. Defendant was convicted in a jury trial of breaking and entering with intent to steal and was sentenced to serve a three-to-five-year term in State Prison. On appeal the Appellate Division, one judge dissenting, reversed. The majority found that the failure to instruct the jury that voluntary intoxication could negate the specific intent element

of the offense charged constituted reversible error. It also held that introduction into evidence of certain prior convictions of the defendant was erroneous. 151 *N. J. Super.* 555 (App. Div. 1977). Judge Allcorn dissented on both issues, giving rise to this appeal as of right. *R.* 2:2–1(a).

The facts are substantially undisputed. On August 21, 1974, Mr. and Mrs. Maggipinto, who lived in a one-family dwelling in Union, N. J., retired for the night at approximately 10:00 P.M., their two children having gone to bed earlier in the evening. When they went to bed a 12-inch portable television weighing about 50 pounds was left in its usual position on the kitchen cabinet, plugged into the outlet and with the "rabbit ears" antenna extended in a "V" position.

At approximately 12:15 A.M., the Maggipintos were awakened by a loud noise. Upon going downstairs to investigate, they discovered the defendant standing in the den. Seeing that the defendant had nothing in his hand, Mr. Maggipinto grabbed defendant and brought him into the kitchen, and Mrs. Maggipinto returned upstairs and telephoned the police. Upon being apprehended by Mr. Maggipinto, defendant asked for a cigarette and stated a number of times that he was in the wrong house.

The television set had been moved a distance of about 10 feet from the kitchen cabinet to the dining room. It was no longer plugged in, the plug was wrapped around the handle on the top of the set, and the "rabbit ears" were no longer extended. A clock which had been on top of the set had been placed on the floor. Mr. Maggipinto testified that the defendant pointed to the television and said, "I just want to take your TV."

The Union Township police arrived in about five minutes. The arresting officer testified that defendant had a "normal appearance" with an "odor of alcohol beverage on his breath." The officer questioned the defendant about his consumption of alcohol, and defendant, whose speech was not slurred, told him he had had "a few" drinks. On cross-examination Mrs.

Maggipinto testified that the defendant did not appear intoxicated at all.

The defendant, his hands placed in handcuffs behind his back, walked with no difficulty from the kitchen to the front entrance, down a flight of eight or nine steps and then to the police car. He exhibited no signs of intoxication during the ride to the police station. At police headquarters he stated his name and address and recited his social security number from memory. His speech was not slurred.

During questioning later in the morning, defendant appeared normal and did not complain of feeling ill. He explained that he walked from the Blue Ribbon Tavern in Hillside to the Maggipinto home, a distance of approximately one mile, that he entered the house believing it to be the home of a girlfriend who lived next door to the Maggipinto home, and that he entered through the basement so as not to alert her husband. Detectives canvassed the area but were unable to locate the residence of the alleged girlfriend or anyone bearing the same name. Subsequent investigation revealed that a lock on a basement window in the Maggipinto home had been broken, the window pushed open and the door from the basement to the kitchen forced.

At trial the defendant did not take the stand. However, three defense witnesses testified that they had observed the defendant in an intoxicated condition earlier in the day. The evidence suggested that defendant had been drinking all day. His business partner testified that when he last saw defendant at approximately 6:30 P.M. defendant was totally drunk and had a bottle in his hand.

At the close of defendant's case the State moved that the court not give an intoxication instruction on the ground that there was no direct evidence that defendant was intoxicated at the time of the crime. The trial judge denied the motion. However, he did charge the jury:

[T]here is testimony and evidence in the case that indicates a voluntary consumption of alcoholic beverages by the defendant prior to

the time that he is alleged to have committed the offense charged in the indictment.

This in no way should be construed as relieving the defendant of criminal responsibility for the crime charged under this indictment. This principle rests upon the sound public policy which holds all men accountable for acts voluntarily undertaken. In this case if you find that the alcohol was voluntarily taken or consumed and the defendant willfully or maliciously entered the home of Mr. and Mrs. Maggipinto at 1110 Salem Road, Township of Union, you may infer that the defendant acted intentionally in committing those acts with which he has been charged.

Explaining that his charge was based on the then existing model jury charge,[1] and commenting that *State v. Maik*, 60 *N. J.* 203 (1972), encompassed more than murder cases when it declared voluntary intoxication not to be a defense to criminal conduct, the trial judge rejected defense counsel's objection that the charge failed to indicate that intoxication could negate specific intent to steal, an element of breaking and entering with intent to steal.

---

[1]Prior to June 26, 1974, the Model Jury Charge provided that voluntary intoxication would lead to an acquittal if defendant was so intoxicated that he "was rendered incapable of forming an intent to commit the offense * * *." *L. Arnold*, 31 *New Jersey Practice* § 1025 at 775 (1976). On June 26, 1974, the Supreme Court's Committee on Model Jury Charges, Criminal, approved a new jury charge almost identical to that given by the trial judge in the instant case. *Id.* at 776. In formulating this new jury charge the Supreme Court Committee apparently believed that *State v. Maik*, 60 *N. J.* 203 (1972), required that the defense of intoxication no longer be available. *Id.* The trial in the instant case was held in July 1975, one year after the new Model Jury Charge was promulgated. Neither the defense counsel nor the assistant prosecutor, however, was aware of the existence of the new Model Jury Charge. On January 31, 1977, after the trial in the instant case, the Supreme Court Committee again revised the charge so that voluntary intoxication would require an acquittal if defendant was not "* * *" capable of forming the necessary specific intent to commit the crime charged." Finally, on January 24, 1978, the Supreme Court Committee wrote to all judges, indicating that the law with regard to the effect of voluntary drunkenness as a defense was in a state of flux, and recommending that the Model Jury Charge then in effect on intoxication not be used.

At the conclusion of the defendant's case, the prosecutor sought to rebut the notion that defendant had mistakenly entered the Maggipinto house by introducing some prior convictions to show the absence of mistake or accident. *Evid. R.* 55. Defendant opposed this motion on the grounds that the convictions did not go to the question of mistake, that they were too remote in time, and that their prejudicial effect outweighed their probative value. The trial court sustained defendant's objections with respect to a 1960 robbery conviction, a 1965 conviction for possession of stolen property, and a 1967 conviction for larceny, finding that these convictions were not sufficiently related to the issue of mistake. However, the court did permit the introduction into evidence of two 1965 convictions, one for entering and larceny and a second for attempted breaking and entering with intent to steal. The court rejected defendant's assertion that these convictions were too remote in time. Instead, noting the similarity between the prior convictions and the offense charged, he found that the probative value of these convictions outweighed their prejudicial effect. In his charge to the jury the trial judge emphasized on several occasions that the two 1965 convictions had been admitted "for the limited purpose * * * as bearing upon the issue of the absence of mistake or accident when the defendant entered the home of Mr. and Mrs. Maggipinto on August 22, 1974."

The jury found the defendant guilty. A sentence of a three-to-five-year prison term was imposed in view of some nine prior convictions and the defendant's having violated the terms of his release while awaiting sentence by moving to California.

I

The first issue raised on appeal is whether intoxication is available as a defense to the charge of breaking and entering with intent to steal. The majority of the Appellate Division found that the trial judge's instruction that voluntary

intoxication was not a defense constituted reversible error. Relying on the distinction between general and specific intent, *State v. Del Vecchio*, 142 *N. J.* 359 (App. Div.), certif. den. 71 *N. J.* 501 (1976), the court held that voluntary intoxication is a defense to a charge of breaking and entering with intent to steal to the extent that it prevents the defendant from forming the specific intent to steal. In so ruling, the Appellate Division viewed the rule set forth by this Court in *State v. Maik*, 60 *N. J.* 203 (1972), as being limited to murder cases.

Judge Allcorn, reading *Maik* as precluding voluntary intoxication as a defense generally for crimes other than first degree murder, disagreed. He viewed *Del Vecchio* to be in conflict with the rule laid down in *Maik*. Judge Allcorn also concluded that, even if intoxication were a valid defense, the lack of evidence of intoxication at the time of the breaking and entering would have precluded a charge on that issue.

For the reasons stated in *State v. Stasio*, 78 *N. J.* 467 (1979), decided this day, we reverse the Appellate Division's holding that voluntary intoxication was available generally to disprove a charge of breaking and entering with intent to steal. The trial court properly charged the jury in this regard and the defendant is not entitled to a new trial on this ground.

Our opinion in *Stasio* does not preclude the introduction of evidence of intoxication to buttress the affirmative defense of reasonable mistake. This is distinguishable from the use of voluntary intoxication as a general denial of the intent to commit the crime. In the present case the trial court's instruction on intoxication did not prevent the jury from considering defendant's possible intoxication as it might have related to mistake. The court tied the intoxication instruction into the requirement that the jury find that Atkins willfully or maliciously entered the Maggipinto home. While the trial court might have given instructions somewhat more favorable to the defendant's apparent theory that he

entered the home by mistake induced in part by his intoxicated state, when the charge is read as a whole, we are satisfied that the jury was not misled nor improperly instructed. *State v. Wilbely*, 63 *N. J.* 420, 422 (1973). Furthermore, evidence of the defendant's guilt was overwhelming. We have no doubt that the jury would have arrived at the same verdict even had the trial court's instructions been more favorable in this regard.

## II

An additional issue raised on appeal is the admissibility of two 1965 convictions, one for breaking and entering and larceny and the other for attempted breaking and entering with intent to steal. While refusing to admit evidence of prior convictions for robbery, larceny, carrying a weapon, and possession of stolen property, the trial court did admit the evidence of the two 1965 convictions under *Evid. R.* 55 as tending to prove absence of mistake or accident. A majority of the Appellate Division disagreed with the trial court, finding instead that the potential prejudice of the prior crimes evidence outweighed its probative value. In addition, the majority concluded that the erroneous admission of the prior convictions constituted reversible error. Judge Allcorn, in dissent, argued that in light of the defendant's claim that he entered the Maggipinto home by mistake, the prior offenses of breaking and entering with intent to steal and larceny were relevant with respect to whether the entry was inadvertent or for the purpose of committing a theft. He further maintained that even if the evidence had been improperly admitted, the error was clearly harmless. We agree with Judge Allcorn's dissent on this issue.

Whether prior crimes are admissible into evidence requires a balancing of the probative value regarding intent or absence of mistake against the potential for prejudice. See 1963 *Report of the New Jersey Supreme Court Committee on Evidence,* Comment on Rule 55 at 104; *State v. Butler,*

32 *N. J.* 166, 189, *cert.* den. 362 *U. S.* 984, 80 *S. Ct.* 1074, 4 *L. Ed.* 2d 1019 (1960). The trial judge engaged in just this sort of balancing and, particularly in view of his feel of the case, we do not find his judgment constituted an abuse of the discretion vested in him. See *People v. Townsend,* 28 *Ill. App.* 3d 1094, 329 *N. E.* 2d 804 (App. Ct. 1975) (where defendant in burglary trial disclaimed any intent to steal, prior convictions for unrelated burglaries admissible) ; *State v. Nading,* 214 *Kan.* 249, 252–253, 519 *P.* 2d 714, 718–719 (1974) (where defendant in attempted burglary trial disclaimed any intent to steal, seven and eight-year-old convictions for unconnected burglaries probative of defendant's intent) ; *People v. Romero,* 244 *Cal. App.* 2d 495, 53 *Cal. Rptr.* 260 (Dist. Ct. App. 1966) (where defendant charged with burglary contended that as a result of intoxication he was without specific intent necessary for burglary, evidence of prior burglaries with similar *modus operandi* admissible to show defendant's intent).

▮▮▮ That evidence of prior crimes may have some bearing on motive, intent, plan, absence of mistake, knowledge or identity, *Evid. R.* 55, does not automatically warrant its admission. 1972 *Rules of Evidence,* Comment 55.3 (a) at 219–220. If the defense in the instant case had been alibi or a general denial, these prior convictions might properly have been excluded even though they were relevant to intent. See *State v. Putnam,* 178 *Neb.* 445, 133 *N. W.* 2d 605 (1965) (reversible error to allow evidence of prior break-ins where defense was general denial). While intent would still be a necessary element of the prosecutor's case, the question of motive or intent would not have been raised by the evidence and thus the probative value of the prior offenses would likely be outweighed by their prejudicial effect.

Evidence of the defendant's guilt, as we noted above, was so overwhelming that even if the evidence of other crimes had not been admissible, the error was at most harmless. His breaking and entering and movement of the

television set were undisputed. Any possible inadvertence was ruled out when no one bearing the name of the defendant's friend was found to reside in the neighborhood. The defendant produced no evidence to support this position. We have no doubt that the jury would have arrived at its verdict irrespective of the prior convictions. See *State v. La Porte,* 62 *N. J.* 312, 318–319 (1973).

The judgment of the Appellate Division is reversed and the conviction is reinstated.

HANDLER, J., concurring. For reasons which I have expressed in my concurring opinion in *State v. Stasio,* 78 *N. J.* 467 (1979), decided this day, I would recognize that facts bearing upon voluntary intoxication may be presented to the jury as a defense to the crime here charged, breaking and entering with intent to steal. To reiterate some of my observations in the companion case, I would allow voluntary intoxication as a defense but not for the reason that the crime with which Atkins was charged involves "specific intent" as opposed to "general intent". That is a distinction which I reject. Nevertheless intoxication, obviously, may affect a defendant's mental state and, if the crime calls for a particular state of mind to affix criminal responsibility, intoxication as a fact should not be withheld from a jury's deliberations and assessment of guilt. To ignore or disregard such facts imports a fiction into the criminal process which ought not be countenanced.

The criminal law should not excuse criminal acts merely because they have been committed by drunks. The need to protect society from this brand of criminality is as real and important as protection from sober malefactors. That need, however, is adequately met by recognizing that the level or degree of intoxication which will be sufficient in fact to overcome a mental state otherwise required to ascribe guilt to a defendant must be substantial. Intoxication that so affects a defendant's mind as to render him unconscious or deprive him of will or volition or leaves him unable to

reason or think should be required in order to constitute a defense in fact to the commission of a crime calling for consciousness, volition, purpose or knowledge. *State v. Stasio, supra* at 489 (Handler, J., concurring).

The majority of this Court, while professing to repudiate voluntary intoxication as a defense in these circumstances, approaches a similar result. Intoxication of a degree that will prostrate the senses may constitute a defense, according to the majority, if it demonstrates defendant was "mistaken", *Ante* at 459–461, or in some way negates the very commission of the crime, *State v. Stasio, supra* at 482–484.

In my view, the requisite mental state for the commission of the charged crime of breaking and entering with intent to steal involves volitional ability and consciousness, *cf.* *N. J. S. A.* 2C:2–2. If a defendant has become so inebriated as to be in a stuporous and unconscious state, without will or ability to think, then voluntary intoxication would become a relevant fact bearing upon the mental components of the crime itself and should be considered by the jury in their determination of the facts.

This case illustrates, as does *State v. Stasio, supra,* a level of intoxication which, in my opinion, would *not* justify a factual determination that defendant lacked the requisite consciousness, volition and reasoning ability to be responsible for his criminal acts. The facts indicative of defendant's mental state are recited in the majority's opinion. *Ante* at 456–457. To be underscored is defendant's admission of guilt on the scene, "I just want to take your T.V.". This revealed graphically willful and purposeful conduct on the part of defendant. It is inconceivable that the jury's conviction would have been altered even by an instruction on voluntary intoxication as a factual defense. While it would have been proper for the trial court to have given that charge, since there was evidence of substantial drinking by defendant antecedent to the breaking and entering, under the total factual picture demonstrating overwhelmingly

defendant's guilt, the error was harmless. *State v. Stefanelli,* 78 *N. J.* 418 (1979).

I must also express disagreement with the majority's decision upholding the admission into evidence under *Evid. R.* 55 of the two 1965 convictions. The Court does so on the thesis that since defendant claimed his presence in the Maggipinto house was the result of a mistake or accident, these prior convictions involving similar charges were probative of the "absence of mistake or accident", *Ante* at 461–462.

The reasoning of the majority of the Appellate Division on the question of the admissibility of these prior convictions is sound. 151 *N. J. Super.* 555, 558–568. The record demonstrates only that the prior conviction involved similar charges; it is barren of any proof that these were similar crimes. I do not agree with its conclusion, however, that the admission of these convictions was not harmless error. The evidence of defendant's guilt was overwhelming. The guilty verdict upon this evidence was inescapable. The evidential ruling of the trial court on the admissibility of the prior conviction was, it is to be emphasized, a discretionary one involving close balancing of competing considerations. While that exercise of discretion was mistaken, it did not serve to destroy the essential fairness of defendant's trial. The error therefore should be regarded as harmless in light of the abundant evidence of guilt and the overall proper discharge of the judge's responsibility in assuring a fair trial.

Accordingly, I would reverse the decision below and reinstate the convictions.

Justice CLIFFORD joins in this opinion.

PASHMAN, J., dissenting. I cannot subscribe to the result reached by the majority in this case. To hold that a defendant may be convicted of the crime of breaking and entering *with intent to steal* when in fact he never possessed such intent "not only defies logic and sound public policy, [but] also runs counter to dictates of prior caselaw and the policies enunciated by our Legislature in the new criminal.code." *State*

*v. Stasio,* 78 *N. J.* 467, 490 (1979) (Pashman, J., dissenting). I therefore dissent for the reasons expressed in my dissenting opinion in *State v. Stasio,* 78 *N. J.* 467 (1979), decided this day.

Moreover, I disagree with the majority's holding that the admission of two 9-year-old convictions unrelated to the offense with which the defendant was charged did not constitute error. My conclusion in this regard is based substantially upon the grounds expressed in the well-reasoned and exhaustive opinion of the Appellate Division majority, *State v. Atkins,* 151 *N. J. Super.* 555 (App. Div. 1977). In *State v. Kociolek,* 23 *N. J.* 400 (1957), we clearly held that the admission of "other crimes" evidence

> * * * ["] is limited to facts which are so connected with the subject in controversy as to make it apparent that the party had a common purpose in both transactions"; "on the trial of a criminal charge it is *not relevant* to show that the defendant has committed other similar crimes which are not connected in any way with the one in question."
>
> [*Id.* at 418 (quoting from *Bullock v. State,* 65 *N. J. L.* 557 (E. & A. 1900) (emphasis supplied)]

There is no contention here that the past crimes were part of a common plan or scheme. Thus, their use was for the sole purpose of showing that the alleged current offense "sprung from the same vicious disposition" as the earlier crimes. Therefore, they were not admissible. *Kociolek, supra,* 23 *N. J.* at 419 (quoting from *State v. Raymond,* 53 *N. J. L.* 260, 264 (Sup. Ct. 1891). *See also State v. Sands,* 76 *N. J.* 127 (1978).

For the foregoing reasons, I would affirm the Appellate Division and remand for a new trial.

CLIFFORD and HANDLER, J.J., concurring in the result.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—Justice PASHMAN—1.